GARG et al., Appellees,

v.

STATE AUTOMOBILE MUTUAL INSURANCE COMPANY;
Grange Mutual Casualty Company, Appellant.

[Cite as *Garg v. State Auto. Mut. Ins. Co.*, 155 Ohio App.3d 258, 2003-Ohio-5960.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 2003 CA 12.

Decided Nov. 7, 2003.

John E. Fulker, for appellees.

Mark R. Chilson, for appellant Grange Mutual Casualty Company.

---

WOLFF, Judge.

{¶ 1} Grange Mutual Casualty Company ("Grange") appeals from a judgment of the Miami County Court of Common Pleas, compelling the production of several documents in an insurance claim file that contain attorney-client communications and attorney work-product materials.

{¶ 2} Mrs. Lila Garg was the owner of a warehouse, located at 405 Peters Road in Troy, Ohio. Dr. Tarsem Garg, her husband, held insurance policies related to the property: (1) a commercial fire insurance policy and a commercial general liability insurance policy, both issued by State Automobile Mutual Insurance Company ("State Auto"), and (2) a homeowner's insurance policy, issued by Grange. The latter policy pertained to the Gargs' residence in Springfield, Ohio, and it contained a provision that also covered personal property owned by them and located "anywhere in the world." According to Grange, Dr. and Mrs. Garg and their adult son, Anup, were insureds under its policy.

{¶ 3} On March 20, 2001, the warehouse premises, including all of its contents, were destroyed by fire. On July 20, 2001, the Gargs submitted a claim to Grange

based on the loss of personal property as a result of the fire. Grange conducted an investigation of the cause and the origin of the fire, and it concluded that the fire was intentionally set by a person who had access to a key to the warehouse. Consequently, Grange requested examinations under oath of Tarsem, Lila, and Anup Garg. The examinations were held in November 2001.

{¶ 4} On February 26, 2002, counsel for the Gargs sent correspondence to Grange, requesting a determination on their claims. The correspondence indicated that if Grange failed to respond promptly and favorably, the Gargs would file suit for the amount of their losses and for bad faith on the part of Grange, based on its refusal to adjust and to pay their claim. On April 4, 2002, prior to Grange's rendering a decision on the Gargs' claim, Dr. Garg filed a complaint against Grange and State Auto, alleging breach of contract, bad faith, and unfair claims practices, and containing a request for punitive damages. Grange filed a counterclaim for a declaratory judgment that the fire was caused by arson and joined Anup Garg as an "involuntary plaintiff." Dr. Garg settled his claims against State Auto, and that insurer has been dismissed from this litigation.

{¶ 5} On June 4, 2002, the Gargs served a request for production of documents, requesting a copy of "Grange's *entire* claims file pertaining to the investigation and consideration of the Plaintiffs' claims." Grange responded by producing documents totaling 1,726 pages and a Privileged Log listing 11 documents that were either redacted or withheld from production on the basis of attorney-client privilege and/or the work-product doctrine.

{¶ 6} On December 4, 2002, the Gargs filed a motion to compel discovery of the redacted and/or withheld documents. Grange opposed the motion and filed a motion to bifurcate, requesting, in the event that the trial court compelled production of the disputed documents, an order bifurcating the trial of the breach-of-contract and unfair-claims-practices claims and the bad-faith claim, with a stay of discovery of the bad-faith claim until the resolution of the underlying breach-of-contract and unfair-claims-practices claims.

{¶ 7} On January 3, 2003, as modified on January 23, 2003, the trial court ruled that all documents in an insurance claims file created prior to a denial of coverage are discoverable, notwithstanding the fact that some may constitute attorney work-product or attorney-client communications. Relying upon *Boone v. Vanliner Ins. Co.* (2001), 91 Ohio St.3d 209, 744 N.E.2d 154, the trial court rejected the suggestion that "the work product doctrine prevents disclosure of information even prior to the denial of the insurance claim in a bad faith claim." The trial court ordered Grange to submit a copy of the entire claims file or, alternatively, only the disputed records, for an in camera inspection so that the court could determine whether the disclosure of the otherwise privileged materials would require bifurcation of the claims at trial. On March 3, 2003, after conducting an

in camera review, the trial court found that the disputed materials were discoverable and ordered the production of the entire claims file within thirty-two days from that date. The trial court did not expressly address the motion to bifurcate.

{¶ 8} Grange raises two assignments of error on appeal.

{¶ 9} "I. The trial court erred in its application of the Ohio Supreme Court's holding in *Boone v. Vanliner* by ordering Grange to produce privileged attorney-client communications that do not relate to the issues of coverage and work product."

{¶ 10} Grange challenges the trial court's decision requiring the insurance company to produce all of the contents of its claim file regarding the Gargs' claim. Specifically, Grange asserts that *Boone* does not require the production of communications protected by attorney-client privilege unless they are related to the issue of coverage. In addition, Grange contends that *Boone* does not mandate the disclosure of work-product materials. The insurance company argues that the trial court erred when it ordered the production (1) of communications protected by the attorney-client privilege that were not related to coverage and (2) of work-product materials.

{¶ 11} Grange's first assignment of error may be broken down into three sub-issues: (1) are work-product materials discoverable under *Boone* ; (2) are attorney-client communications discoverable under *Boone* only if, as asserted by Grange, they are related to the issue of coverage or, rather if, as asserted by the Gargs, they may cast light on whether the handling or denial of the claim was made in bad faith; and (3) did the trial court err in compelling the production of each of the items in the Privileged Log. Each of these issues will be addressed in turn.

{¶ 12} Beginning with the issue of whether work-product materials in a claims file are discoverable, Grange asserts that the Supreme Court of Ohio has consistently adhered to the principles set forth in *Hickman v. Taylor* (1947), 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, which held that an attorney's work product, prepared in anticipation of litigation, is not subject to discovery. Grange states that the *Boone* court did not create an exception to the work-product doctrine, because it confined itself solely to the issue of whether attorney-client communications should be produced. Grange notes that the *Boone* litigation differs from the instant case in that the Gargs threatened litigation prior to the denial of their claim, whereas in *Boone,* the litigation was not anticipated until after a decision was reached on the claim. Grange further argues that the work-product materials at issue were prepared in anticipation of litigation, because the Gargs had previously threatened litigation, and thus they fall within no exception to the doctrine precluding discovery of such documents.

{¶ 13} As noted by Grange, the *Boone* court did not expressly hold that an insured is entitled to discover claims-file materials containing attorney work product that were created in anticipation of litigation but prior to the denial of the claim. In *Boone,* the discoverability of work-product materials was not at issue. However, the *Boone* court provided guidance for the lower courts on this matter. In ruling on whether attorney-client communications in the claims file are discoverable, the court applied its prior reasoning in *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331. In that case, after a substantial jury award for a medical malpractice claim, the plaintiffs sought prejudgment interest, pursuant to R.C. 1343.03(C), which requires the prevailing party to prove, among other things, that the opposing party failed to make a good-faith effort to settle the case. The *Moskovitz* court recognized that one of the most difficult problems regarding R.C. 1343.03 hearings concerned the scope of discovery, and it sought to clarify which materials from the claims file were privileged. After tracing the "ancients roots" of the attorney-client privilege, the court recognized that it must yield in certain circumstances, such as where the advice sought by the client and conveyed by the attorney relates to some future unlawful or fraudulent transaction. With these principles in mind, the court stated that "[d]ocuments and other things showing the lack of a good faith effort to settle by a party or the attorneys acting on his or her behalf are wholly unworthy of the protections afforded by any claimed privilege." *Moskovitz,* 69 Ohio St.3d at 661, 635 N.E.2d 331. It thus held that "neither the attorney-client privilege *nor the so-called work product exception* precludes discovery of the contents of an insurer's claims file. The only privileged matters contained in the file are those that go directly to the theory of defense of the underlying case in which the decision or verdict has been rendered." (Emphasis added.) Id. at paragraph three of the syllabus.

{¶ 14} The *Boone* court rejected the distinction made by the court of appeals, which distinguished *Moskovitz* based on whether the underlying claim remained pending before a court. (In the present case, the underlying claims are the breach-of-contract and the unfair-claims-practices claims.) The *Boone* court noted that "[o]ur ruling in *Moskovitz* did not turn on the status of the underlying claim, but rather upon our recognition that certain attorney-client communications and work-product materials were undeserving of protection, *i.e.,* materials 'showing the lack of a good faith effort to settle.' " *Boone,* 91 Ohio St.3d at 212, 744 N.E.2d 154. The court continued:

{¶ 15} "Like the trial court, we find that the rationale behind our holding in *Moskovitz* is applicable to actions alleging bad faith denial of coverage. That is, claims file materials that show an insurer's lack of good faith in denying coverage are unworthy of protection. It appears, however, that in determining which

documents were protected in this case, the trial court applied the specific holding in *Moskovitz, i.e.,* only those documents containing attorney-client communications and work product that go directly to the theory of defense of the underlying claim are protected. We find this holding inapplicable in the present case because, while the lack of a good faith effort to settle involves conduct that may continue throughout the entire claims process, a lack of good faith in determining coverage involves conduct that occurs when assessment of coverage is being considered. Therefore, the only attorney-client and work-product documents that would contain information related to the bad faith claim, and, thus, be unworthy of protection, would have been created prior to the denial of coverage." Id. at 213, 744 N.E.2d 154. The *Boone* court found fault with the trial court's application of *Moskovitz* (which addressed both attorney-client communications and work-product materials) only to the extent that the lower court allowed the discovery of otherwise protected materials after the denial of coverage. 91 Ohio St.3d at 213, 744 N.E.2d 154.

{¶ 16} Upon review of *Boone,* we conclude that the Supreme Court of Ohio has given no basis for distinguishing materials that are otherwise protected by attorney-client privilege and those otherwise protected by the work-product doctrine. The *Boone* court's failure to reference work-product materials in the syllabus appears to have been based solely on the fact that the circumstances giving rise to the case did not involve work-product materials. Moreover, the court's unequivocal adoption of the rationale in *Moskovitz,* which stated that *both* attorney-client communications *and* work-product materials may be unworthy of protection, indicates that attorney-client communications and work-product materials are to be treated similarly. Thus, both attorney-client communications and work-product materials are subject to disclosure during discovery on bad-faith claims.

{¶ 17} Turning to the issue of whether attorney-client communications and work-product materials are discoverable only if related to the issue of coverage, Grange asserts that the trial court erred when it concluded that *all* attorney-client communications are discoverable up to the time that the insurance claim is denied. It argues that *Boone* limited the discoverable communications to those that "relate to the issue of coverage," and that the trial court should have reviewed the otherwise protected attorney-client communications to determine whether they so related. Grange cites Black's Law Dictionary, which defines "coverage" as "inclusion of a risk under an insurance policy; the risks within the scope of an insurance policy." The company asserts that only those communications between Grange and its attorney that related to whether the risk of loss of personal property, by fire or otherwise, was covered under the Grange homeowner's insurance policy fall within the *Boone* exception. Grange further asserts

that none of the disputed documents relates to coverage and, thus, they fall outside *Boone*'s exception for attorney-client privilege.

{¶ 18} The Gargs respond that Grange interprets *Boone* too narrowly. They contend that the Supreme Court of Ohio has concluded that claims-file materials that demonstrate an insurer's lack of good faith in denying coverage are unworthy of protection. Thus, the Gargs argue, otherwise privileged communications that demonstrate bad faith on the part of the insurer are discoverable, regardless of whether the communications relate to the issue of coverage. In so arguing, the Gargs have "recognize[d] that the syllabus is worded in language which, at first blush, and taken out of context, would seem to restrict discoverable materials to those containing attorney-client communications related to the issue of coverage." They contend, however, that "when the syllabus is read in *pari materia* with the language of the full opinion, it becomes apparent that the actual holding of the Court might have been more clearly stated if the word 'including' were substituted for the word 'containing.' "

{¶ 19} As indicated by Grange, the syllabus in *Boone* indicates which attorney-client communications are subject to discovery in a bad-faith claim: "In an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications *related to the issue of coverage* that were created prior to the denial of coverage." (Emphasis added.) Id. However, as argued by the Gargs, although the syllabus is narrowly tailored to the facts of the case, the opinion in *Boone* is written with broader strokes. Framing the issue before the court, the *Boone* court stated: "The issue before us is whether, in an action alleging bad faith denial of insurance coverage, the insured is entitled to obtain, through discovery, claims file documents containing attorney-client communications and work product that may cast light on whether the denial was made in bad faith." *Boone*, 91 Ohio St.3d at 211–212, 744 N.E.2d 154. Thus, in the body of the opinion, the *Boone* court expressed a broader inquiry than that indicated by the syllabus.

{¶ 20} Throughout the opinion, the *Boone* court indicated that its focus was not limited only to those documents related to coverage. In *Moskovitz*, the court had indicated that the documents showing the lack of a good-faith effort to settle included virtually everything in the claims file. It held that "[t]he only privileged matters contained in the file are those that go directly to the theory of the defense of the underlying case in which the decision or verdict has been rendered." *Moskovitz*, 69 Ohio St.3d at 663–664, 635 N.E.2d 331. Adopting the rationale in *Moskovitz*, the *Boone* court stated, as quoted in its entirety above, that materials in the claims file "that *show an insurer's lack of good faith in denying coverage* are unworthy of protection." (Emphasis added.) *Boone*, 91 Ohio St.3d at 213, 744 N.E.2d 154. The *Boone* court further emphasized that in

bad-faith-denial-of-coverage cases, "the only attorney-client and work-product documents that would contain information *related to the bad faith claim, and, thus, be unworthy of protection,* would have been created prior to the denial of coverage." Id. Thus, reading *Moskovitz* and *Boone* together, the Supreme Court of Ohio has indicated that the critical issue in evaluating the discoverability of otherwise privileged materials is not whether the attorney-client communications related to the existence of coverage but, rather, whether they may cast light on bad faith on the part of the insurer.

{¶ 21} Having set forth which claims-file materials are discoverable with regard to a bad-faith claim under *Boone,* we now address whether the trial court erred by compelling the production of the disputed materials, i.e., the documents in the Privileged Log. Grange asserts that documents numbered 1738 through 1772, and 1773 and 1777, were prepared in anticipation of litigation and contain or reflect attorney work product and, therefore, are protected from discovery under the work-product doctrine. Grange further asserts that documents numbered 1727 through 1778 are attorney-client communications that do not relate to the issue of coverage.

{¶ 22} Upon review of the documents contained in the Privileged Log, we agree with the trial court that documents numbered 1727 through 1778 must be disclosed. Documents numbered 1727 through 1737 were created both prior to the threat of litigation and the denial of coverage, and they may cast light on whether Grange acted in bad faith in failing to respond to the Gargs' insurance claim. Accordingly, the trial court did not err when it compelled the production of these materials.

{¶ 23} Documents numbered 1738 through 1778 were created after the Gargs' February 26, 2002 correspondence, which threatened litigation if Grange failed to resolve and to adjust their claim promptly. Thus, these documents may contain attorney work product. However, as stated above, attorney work product is discoverable to the same extent as attorney-client communications. Documents numbered 1738 through 1741 and 1773 through 1776 relate to the factual investigation of the Gargs' claim. Documents numbered 1742 through 1772 contain attorney Mark Chilson's advice to Grange regarding the factual investigation of the claim and his analysis regarding the civil arson defense. Documents numbered 1777 and 1778 reference that correspondence. All of these documents were created prior to the denial of the Gargs' claim and may shed light on whether Grange acted in bad faith in its investigation and handling of their claim. Accordingly, the trial court properly ruled that documents numbered 1738 through 1778 were discoverable.

{¶ 24} In summary, the trial court properly compelled production of the entire claims file. Under *Boone,* neither attorney-client privilege nor the work-product

doctrine protects materials in a claims file, created prior to the denial of the claim, that may cast light on whether the insurer acted in bad faith in handling an insured's claim.

{¶ 25} The first assignment of error is overruled.

{¶ 26} "II. The trial court abused its discretion by ordering Grange to produce protected work-product materials and/or privileged attorney-client communications without bifurcating the underlying claims from the bad faith claims for trial, and staying discovery of the bad faith claims until after resolution of the underlying claims."

{¶ 27} In its second assignment of error, Grange asserts that the trial court erred in ordering it to produce the otherwise protected work-product materials and attorney-client communications without bifurcating the bad-faith claim from the other pending claims for trial and without staying discovery on the bad-faith claim until after the resolution of the breach-of-contract and unfair-claims-practices claims. The Gargs respond that the trial court, having reviewed the disputed documents and having heard the arguments, exercised its discretion, ordered the production of the documents, and declined to bifurcate the claims for trial. They argue that *Boone* recognized the potential for disclosure to "inhibit the insurer's ability to defend on the underlying claim." They note, however, that *Boone* does not require bifurcation and, thus, they argue that the trial court did not abuse its discretion when it declined to order bifurcation in the present action.

{¶ 28} Although the trial court did not expressly address Grange's motion to bifurcate, we presume that it has been overruled. *State ex rel. The v. Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198 ("when a trial court fails to rule on a pretrial motion, it may ordinarily be presumed that the court overruled it"). We review a denial of a motion to bifurcate claims or issues for trial under an abuse-of-discretion standard. *Amerifirst Savings Bank of Xenia v. Krug* (1999), 136 Ohio App.3d 468, 485, 737 N.E.2d 68. The term "abuse of discretion" connotes more than a mere error of law or judgment, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Id.; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 29} We agree with Grange that the trial court's failure to bifurcate the bad-faith claim for trial and to stay discovery on that claim would be grossly prejudicial to Grange and, thus, an abuse of discretion. The Gargs are not entitled to discover Grange's attorney-client communications and attorney work-product materials for purposes of their breach-of-contract and unfair-claims-practices claims, absent waiver of those privileges. See *Moskovitz*, supra. Documents numbered 1742–1772 contain Chilson's analysis of the factual investi-

gation of the claim and of the defense of arson. Although that correspondence may cast light on whether Grange acted in bad faith in handling the Gargs' claim and, thus, is discoverable for purposes of the bad-faith claim, it is also highly relevant to Grange's defense of the breach-of-contract and unfair-claims-practices claims. To require Grange to divulge its otherwise privileged information prior to a resolution of those other claims would unquestionably impact Grange's ability to defend against them.

{¶ 30} As noted by the parties, *Boone* has provided guidance for preventing the prejudice that may result from the disclosure of attorney-client communications and work-product materials due to a bad-faith claim. Specifically, *Boone* instructs that courts may bifurcate the trial on a bad-faith claim from the remaining claims and may stay the discovery for a bad-faith claim until after a resolution of those claims. In light of the prejudice to Grange that likely will result from the disclosure of the attorney-client communications and the work-product materials in the claims file, we conclude that the trial court acted unreasonably when it failed to prevent that prejudice by bifurcating the trial and staying discovery on the bad-faith claim.

{¶ 31} The second assignment of error is sustained.

{¶ 32} The judgment of the trial court will be affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part
and cause remanded.

FAIN, P.J., and GLASSER, J., concur.

GEORGE M. GLASSER, J., retired, of the Sixth Appellate District, sitting by assignment.