UNKLESBAY, Appellee,

v.

FENWICK et al., Appellants.

[Cite as *Unklesbay v. Fenwick*, 167 Ohio App.3d 408, 2006-Ohio-2630.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2005–CA–108.

Decided May 19, 2006.

John C. Henck, for appellee.

Richard A. Williams and Susan S.R. Petro, for appellants.

BROGAN, Judge.

{¶ 1} The Preferred Mutual Insurance Company appeals from the trial court's September 15, 2005 order and judgment entry sustaining the motion by appellee, Charles Unklesbay, to compel the production of claims-file materials.

{¶ 2} Preferred Mutual advances four assignments of error on appeal. First, it contends that the trial court abused its discretion in sustaining the motion to compel absent evidence that Unklesbay had complied with Civ.R. 37(E). Second, it asserts that the trial court erred in ordering it to produce privileged materials in its claims file. Third, it claims that the trial court erred in ordering it to produce the privileged materials without first conducting an in camera review to determine whether the materials were discoverable. Fourth, it argues that the trial court erred in ordering it to produce the claims-file materials without identifying any documents with particularity.

{¶ 3} The present appeal stems from an automobile accident in which Casity Fenwick backed her car into Unklesbay, striking him as he walked across a parking lot. As a result of the accident, Unklesbay suffered injuries that required surgery. After being unable to verify any liability insurance coverage for Fenwick, Unklesbay sent a demand letter on May 8, 2002, to Preferred Mutual, which was his own uninsured-/underinsured-motorist ("UM/UIM") insurer. For reasons that are disputed, Preferred failed to pay Unklesbay's claim, in which he offered to settle for his $25,000 policy limit even though he claimed damages exceeding that amount.

{¶ 4} On June 18, 2002, Unklesbay filed a complaint asserting a negligence claim against Fenwick and seeking a declaratory judgment regarding his right to obtain UM/UIM benefits from Preferred Mutual. On October 4, 2002, Unklesbay sought leave to amend his complaint to add a bad-faith claim based on Preferred Mutual's alleged refusal to investigate and failure to pay his claim. After holding the motion to amend in abeyance, the trial court ultimately granted it on September 22, 2004. Shortly thereafter, Unklesbay requested discovery from Preferred Mutual, including certain claims-file materials. Preferred Mutual responded by taking the position that it never had denied coverage and that the claims file contained privileged documents.

{¶ 5} Unklesbay filed a motion to compel the requested discovery on January 4, 2005. Later that day, the trial court filed an entry sustaining the motion. Apparently unaware that the trial court had sustained the motion, Preferred Mutual filed an opposing memorandum and requested a hearing on the discovery issue. Thereafter, Preferred Mutual moved for reconsideration of the trial court's ruling. Without expressly resolving the motion for reconsideration, the trial court scheduled the motion to compel for a March 4, 2005 hearing. The trial

court later rescheduled the hearing for June 20, 2005. Preferred Mutual did not appear for the June 20, 2005 hearing, however, due to a lack of notice. Nevertheless, after Preferred Mutual's non-appearance, Unklesbay moved for a ruling on his motion to compel. The trial court responded by sustaining the motion for a second time on June 28, 2005. The following day, Preferred Mutual filed a memorandum in which it attributed its nonappearance to a lack of notice, opposed the motion to compel, and requested either dismissal of the motion or the scheduling of another hearing. On August 3, 2005, the trial court filed a one-sentence entry scheduling a "motion hearing" for August 19, 2005.

{¶ 6} At the August 19, 2005 hearing, the parties informed the trial court that they had settled the underlying coverage issue and that only Unklesbay's bad-faith claim remained pending. After hearing brief arguments from the parties on the motion to compel, the trial court sustained the motion again, finding that "the Plaintiff does have a right to the matters as requested and the files he's requested." Shortly thereafter, the trial court filed a September 15, 2005 entry directing Preferred Mutual "to produce to Plaintiff all of its claims file materials that were created prior to Defendant's payment of insurance benefits to Plaintiff, including but not limited to attorney-client communications relating to coverage." This timely appeal followed.[1]

{¶ 7} In its first assignment of error, Preferred Mutual contends that the trial court abused its discretion in sustaining the motion to compel absent evidence that Unklesbay had complied with Civ.R. 37(E), which provides:

{¶ 8} "(E) Before filing a motion authorized by this rule, the party shall make a reasonable effort to resolve the matter through discussion with the attorney, unrepresented party, or person from whom discovery is sought. The motion shall be accompanied by a statement reciting the efforts made to resolve the matter in accordance with this section."

{¶ 9} On appeal, Preferred Mutual challenges the adequacy of Unklesbay's showing in his motion to compel that reasonable efforts to resolve the discovery dispute had been made. In particular, Preferred Mutual contends that Unklesbay failed to comply with Civ.R. 37(E) because he merely attached to his motion correspondence outlining the nature of the ongoing discovery dispute. Based on what it perceives as Unklesbay's failure to comply with the mandates of Civ.R. 37(E), Preferred Mutual argues that we should reverse the trial court's discovery order.

---

1. Unklesbay does not dispute that the trial court's discovery ruling may be appealed, because an order granting discovery of otherwise-privileged matter is a provisional remedy that is final and appealable. See, e.g., *Mays v. Dunaway* (April 1, 2005), Montgomery App. No. 20717, 2005-Ohio-1592, 2005 WL 742502.

{¶ 10} Upon review, we find Preferred Mutual's first assignment of error to be unpersuasive. In *Studer v. Seneca Cty. Humane Soc.* (May 4, 2000), Seneca App. No. 13–99–59, 2000 WL 566738, the Third District Court of Appeals recognized that the purpose of Civ.R. 37(E) "is to endorse and enforce the view that, in general, discovery is self-regulating and should require court intervention only as a last resort." Thus, the Third District reasoned that Civ.R. 37(E) "was designed more for the benefit of the trial courts, not as an appellate obstacle." Id.

{¶ 11} We agree with the foregoing assessment. A deficient showing under Civ.R. 37(E) certainly could justify the denial of a motion to compel. But once a trial court has gone to the trouble of conducting a hearing on a motion and issuing a decision resolving the parties' dispute, as the trial court has done in this case, we see no useful purpose in invoking Civ.R. 37(E)—which is intended to benefit the trial court—to reverse its judgment and force the court to begin its work again after the filing of a renewed motion to compel. Thus, we decline to find that the trial court abused its discretion in proceeding to consider the merits of Unklesbay's motion to compel despite any potential shortcomings under Civ.R. 37(E). Preferred Mutual's first assignment of error is overruled.

{¶ 12} In its second assignment of error, Preferred Mutual asserts that the trial court erred in ordering it to produce privileged materials in its claims file. This argument implicates the Ohio Supreme Court's decision in *Boone v. Vanliner Ins. Co.* (2001), 91 Ohio St.3d 209, 744 N.E.2d 154, which addressed the discoverability of otherwise-privileged case-file materials in actions alleging the bad-faith denial of insurance coverage. The *Boone* court held that "[i]n an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage." Id. at syllabus. In support, the majority reasoned that "[c]laims file materials that show an insurer's lack of good faith in denying coverage are unworthy of protection." Id. at 213, 744 N.E.2d 154. The *Boone* court added that the only documents "that would contain information related to the bad faith claim, and, thus, be unworthy of protection, would have been created prior to the denial of coverage." Id. Although the discovery dispute in *Boone* involved attorney-client communications, we expressly applied its holding to discovery of attorney-client communications *and* work-product materials on a bad-faith-denial-of-coverage claim in *Garg v. State Auto. Mut. Ins. Co.*, 155 Ohio App.3d 258, 2003-Ohio-5960, 800 N.E.2d 757, ¶ 24 (reasoning that "[u]nder *Boone*, neither attorney-client privilege nor the work-product doctrine protects materials in a claims file, created prior to the denial of the claim, that may cast light on whether the insurer acted in bad faith in handling an insured's claim").

{¶ 13} Preferred Mutual argues that *Boone* and *Garg* are distinguishable from this case and, therefore, do not mandate discovery of its claims file, because those cases involved actions alleging the bad-faith *denial* of insurance coverage. Preferred Mutual asserts that it never expressly denied Unklesbay's UM/UIM claim. To the contrary, the insurance company notes, it ultimately paid Unklesbay's claim and he responded by dismissing his declaratory-judgment action regarding UM/UIM coverage. Absent an outright denial of coverage, Preferred Mutual points out, quite logically, that nothing in its claims file could demonstrate a lack of good faith in denying coverage. Therefore, the insurance company argues, the privilege exception discussed in *Boone* and *Garg* does not apply and Preferred Mutual's claims file remains protected from discovery.

{¶ 14} We are unpersuaded by Preferred Mutual's argument. It is true that *Boone* and *Garg* involved causes of action alleging bad faith in the denial of insurance coverage. But an insurance company can exhibit bad faith in other ways as well. In Ohio, an insurer has a duty to act in good faith toward its insured in carrying out its responsibilities under the policy of insurance. *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315, paragraph one of the syllabus. Those responsibilities include the handling and payment of an insured's claim. Id. Thus, "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its *refusal to pay* the claim is not predicated upon circumstances that furnish reasonable justification therefor." (Emphasis added.) *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, paragraph one of the syllabus.

{¶ 15} In *Mundy v. Roy,* Clark App. No. 2005–CA–28, 2006-Ohio-993, 2006 WL 522380, we recognized that a bad-faith "refusal to pay" encompasses more than the outright denial of a claim. In that case, the insured had filed a bad-faith cause of action, alleging that his UM/UIM insurer had acted in bad faith by delaying the processing of his claim and by making an unreasonably low settlement offer. He sought discovery on his bad-faith claim, but the trial court granted the insurer's motion for a protective order. On appeal, the insurer argued that no discovery of its claims file was allowed because it never had denied coverage. Instead, the insurance company argued, it merely had disputed the value of the claim. Upon review, we declined to interpret a bad-faith "refusal to pay" as being synonymous with the denial of a claim. We reasoned that the insurer's foot-dragging in the claims-handling and evaluation process could support a bad-faith cause of action. We also concluded that *Boone* authorized the insured to obtain discovery of the insurer's claims file. In so doing, we reasoned: "Although *Boone* involved the outright denial of an insurance claim, we reject Allstate's assertion that it has no applicability to Mundy's bad-faith claim, which arises from Allstate's claim processing and refusal to settle with him. In our

view, much of *Boone's* reasoning remains applicable without regard to this distinction."

{¶ 16} We reach the same conclusion here. Under *Boone,* "[c]laims file materials that show an insurer's lack of good faith in denying coverage are unworthy of protection." *Boone,* 91 Ohio St.3d at 213, 744 N.E.2d 154. Likewise, we conclude that claims-file materials showing an insurer's lack of good faith in processing, evaluating, or refusing to pay a claim are unworthy of the protection afforded by the attorney-client or work-product privilege. This is true regardless of whether the insurer ever denied the claim outright. Preferred Mutual's second assignment of error is overruled.

{¶ 17} In its third assignment of error, Preferred Mutual contends that the trial court erred in ordering it to produce privileged claims-file materials without first conducting an in camera review to determine whether the materials were discoverable. In support, Preferred Mutual notes our observation in *Garg* that "the critical issue in evaluating the discoverability of otherwise privileged materials is * * * whether they may cast light on bad faith on the part of the insurer." *Garg,* 155 Ohio App.3d at 265, 800 N.E.2d 757. Preferred Mutual suggests that its claim file may contain some otherwise-privileged materials that *do not* cast light on its alleged bad faith in the handling of Unklesbay's claim. Therefore, the insurance company argues, the trial court must review the claims file prior to its production to Unklesbay to prevent the disclosure of any nondiscoverable materials.

{¶ 18} In support of its argument, Preferred Mutual notes that the trial courts in both *Garg* and *Boone* conducted in camera reviews before ordering discovery of an insurer's claims-file materials. Preferred Mutual also points out that performing an in camera review is consistent with *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, and *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, 25 OBR 207, 495 N.E.2d 918, both of which involved requests for prejudgment interest due to an insurer's lack of a good-faith effort to settle. In those cases, the Ohio Supreme Court stated: " 'If the defense asserts the attorney-client privilege with regard to the contents of the 'claims file,' the trial court shall determine by in camera inspection which portions of the file, if any, are so privileged. The plaintiff then shall be granted access to the non-privileged portions of the file.' " *Moskovitz,* 69 Ohio St.3d at 660, 635 N.E.2d 331, quoting *Peyko* at paragraph two of the syllabus.

{¶ 19} Finally, Preferred Mutual relies on *Scotts Co. v. Employers Ins. of Wausau,* Union App. No. 14–04–51, 2005-Ohio-4188, 2005 WL 1939422. In that case, Scotts sought insurance coverage from its insurer. After the insurer denied coverage, Scotts filed suit, alleging, inter alia, bad-faith denial of coverage. The

insurer subsequently resisted discovery of attorney-client and work-product materials pursuant to *Boone,* supra. The trial court compelled discovery, however, holding that the Ohio Supreme Court's ruling in *Boone* abrogated the privilege for any materials created prior to the denial of coverage. On appeal, the insurer argued that the trial court's discovery order exceeded the scope of *Boone.* The Third District found it impossible to resolve the privilege issue, however, without reviewing actual documents. Id. at ¶ 12. As a result, the *Scotts* court reversed the trial court's judgment entry ordering the requested materials to be produced directly to the plaintiff and remanded for the trial court "to perform an in camera review of any and all documents that may fall within the discovery order set forth by the trial court and the decision of the Ohio Supreme Court in *Boone.*" Id. at ¶ 13.

{¶ 20} In opposition to Preferred Mutual's assignment of error, Unklesbay points out that neither *Boone* nor *Garg* specifically required an in camera inspection because the trial court in those cases already had performed one. Unklesbay also notes that *Scotts* is distinguishable on its facts because the discovery materials at issue there appear to have exceeded the scope of what *Boone* held was discoverable. Finally, Unklesbay asserts that Preferred Mutual waived the issue of an in camera inspection by never moving for one, giving the claims-file materials to the trial court, or filing a privilege log.

{¶ 21} Upon review, we conclude that the trial court abused its discretion in failing to conduct an in camera review of Preferred Mutual's claims file. In reaching this conclusion, we first note that an insurance company bears the burden of establishing that materials sought to be excluded from discovery on the basis of privilege in fact are privileged. *Peyko,* 25 Ohio St.3d at 166, 25 OBR 207, 495 N.E.2d 918. The most feasible way for an insurer to satisfy this burden is to obtain judicial review of the materials in camera. We believe such a review was particularly necessary in this case because the bad-faith exception to privilege discussed in *Boone* and *Garg* does not automatically permit discovery of everything contained in a claims file. In *Boone,* the Ohio Supreme Court reasoned that materials in a claims file "that show an insurer's lack of good faith in denying coverage are unworthy of protection." *Boone,* 91 Ohio St.3d at 213, 744 N.E.2d 154. Likewise, we concluded in *Garg* that "the critical issue in evaluating the discoverability of otherwise privileged materials is * * * whether they may cast light on bad faith on the part of the insurer." *Garg,* 155 Ohio App.3d at 265, 800 N.E.2d 757.

{¶ 22} In the present case, however, the trial court ordered Preferred Mutual to produce "to Plaintiff *all of its claims file materials that were created prior to Defendant's payment of insurance benefits to Plaintiff,* including but not limited to attorney-client communications relating to coverage, within twenty-one (21)

days of this Order." (Emphasis added). For the reasons set forth in our analysis of Preferred Mutual's fourth assignment of error, infra, we have no trouble with the trial court's choice of the benefit-payment date as the dividing line between what in the claims file is discoverable and what is not. But Preferred Mutual's claims file may contain otherwise-privileged documents created prior to the payment of insurance benefits that *do not* "cast light on" or show the insurance company's lack of good faith. Under *Boone* and *Garg,* such documents would not be subject to discovery, but the trial court's order requires their production. We are particularly troubled by the possibility that Preferred Mutual's claims file might contain attorney-client or work-product documents created after the filing of Unklesbay's lawsuit but prior to his receipt of insurance benefits that are relevant to the insurance company's defense of his bad-faith claim but which do not themselves show any bad faith in Preferred Mutual's handling of his claim. Under *Boone* and *Garg,* we do not believe that such documents would be discoverable. As a result, at least under the circumstances of this case, we conclude that the trial court was obliged to conduct an in camera review before ordering the discovery that it did.

{¶ 23} In reaching the foregoing conclusion, we reject Unklesbay's argument that Preferred Mutual waived the issue of an in camera review. Although the insurance company never filed a motion seeking such review, it did raise the issue in at least two memoranda and offered to produce the claims-file materials for the trial court to review. We conclude that this sufficiently raised the issue in the trial court and preserved it for appeal. Preferred Mutual's third assignment of error is sustained.

{¶ 24} In its fourth assignment of error, Preferred Mutual asserts that the trial court erred in ordering it to produce privileged claims-file materials without identifying any documents with particularity. The sole argument under the insurance company's fourth assignment of error, however, is actually that the trial court erred in requiring it to produce claims-file materials created prior to its payment of insurance benefits to Unklesbay. Preferred Mutual reasons that, at most, the trial court should have followed *Boone,* supra, and ordered the production of claims-file materials that were created prior to the *denial of coverage* rather than prior to the *payment of benefits.* In support, Preferred Mutual argues as follows:

{¶ 25} "[T]here can be no question that under *Boone* the demarcation point between discoverable and nondiscoverable materials is that date when coverage is denied. Nonetheless, the trial court's September 14, 2005, Judgment Entry and Order identifies as its demarcation point the date of Appellant's 'payment of insurance benefits to [Appellee].' Thus, the September 14, 2005, Order turns *Boone* and *Garg* on their heads, purporting to make the insurer's grant of

coverage and payment of benefits, not its denial of coverage and withholding of benefits, the date prior to which documents in its claims file might contain evidence of bad faith conduct. There is no precedential authority on which for the trial court to have based such an order, nor did the trial court provide any reasoning to explain how the insurer's conduct prior to affording coverage and paying a claim could shed light on whether the insurer acted in bad faith." (Citations and emphasis omitted.)

{¶ 26} We find no merit in Preferred Mutual's argument. This is not a true bad-faith denial-of-coverage case. Indeed, as the insurance company points out, it cannot be one, because benefits eventually were paid. That is why the trial court failed to select a denial-of-coverage date to distinguish claims-file materials that are discoverable from those nondiscoverable. Unklesbay's bad-faith cause of action includes allegations of bad-faith handling, processing, evaluating, and refusing to pay his claim. Essentially, then, he alleges foot-dragging on the part of Preferred Mutual. As a result, applying the rationale of *Boone* to the facts of this case, we agree with the trial court's assessment that attorney-client and work-product documents relevant to Unklesbay's bad-faith claim could have been created until the time that Preferred Mutual quit dragging its feet, settled his claim, and paid him benefits.[2] Therefore, the trial court did not err in adopting the benefit-payment date to determine which claims-file materials may be subject to discovery. Preferred Mutual's fourth assignment of error is overruled.

{¶ 27} Having sustained the insurance company's third assignment of error, however, we hereby reverse the judgment of the Clark County Common Pleas Court granting Unklesbay's motion to compel and remand the cause for an in camera review of Preferred Mutual's claims-file materials.

Judgment reversed
and cause remanded.

GRADY, P.J., and DONOVAN, J., concur.

---

2. We do not mean to suggest that Preferred Mutual actually engaged in bad-faith foot-dragging to delay payment of a valid claim. The merits of Unklesbay's bad-faith cause of action are not before us. We recognize that Preferred Mutual has what it believes are legitimate reasons for the delays that occurred in this case. Those reasons, however, go to the merits of Unklesbay's bad-faith claim. For present purposes, we need only determine, based on the allegations in the complaint, what portions of the claims file might be relevant to Unklesbay's bad-faith cause of action and subject to discovery.