[Cite as *Scott Fetzer Co. v. Am. Home Assur. Co., Inc.*, 2022-Ohio-1062.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

THE SCOTT FETZER COMPANY,          :

    Plaintiff-Appellee,          :

                                    No. 110428

    v.          :

AMERICAN HOME ASSURANCE          :
COMPANY, INC., ET AL.,

    Defendants-Appellant.          :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 31, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-922509

---

## *Appearances:*

Benesch, Friedlander, Coplan & Aronoff, LLP, Joseph A. Castrodale, Michael D. Meuti, Gregory T. Frohman, James J. Walsh, Jr., Nicholas J. Secco, pro hac vice, and Andrew J. Jarzyna, pro hac vice; Mellott Legal, LLC, and David W. Mellott, *for appellee.*

Plunkett Cooney, Christina L. Corl, Patrick E. Winters, Kenneth C. Newa, Charles W. Browning, pro hac vice, and Jeffrey C. Gerish, pro hac vice, *for appellant.*

LISA B. FORBES, J.:

{¶ 1} Defendant Travelers Casualty and Surety Company ("Travelers") appeals the trial court's journal entry applying Ohio law and ordering Travelers to produce certain documents in this civil action requesting declaratory judgment regarding an insurance coverage determination dispute and alleging breach of contract and bad faith. After reviewing the facts of the case and pertinent law, we affirm the lower court's judgment.

## I.    Facts and Procedural History

{¶ 2} In 1986, the United States Environmental Protection Agency (the "EPA") identified two hazardous waste sites located in Michigan that needed remediation (the "Sites"). The Scott Fetzer Company ("Fetzer") was identified, through a series of corporate mergers and acquisitions, as a potentially responsible party concerning the Sites. As a result, the EPA asserted claims against Fetzer (the "Claims"). Fetzer, in turn, sought coverage from Travelers to defend the Claims based on general-liability insurance policies Travelers' predecessor, Aetna, allegedly issued to Fetzer's predecessor, Kingston Products, from 1964-1968. Travelers disputes the existence and, therefore, the coverage of these policies.

{¶ 3} On October 1, 2019, Fetzer filed its complaint against Travelers, seeking a declaration of its coverage rights, as well as Travelers' insurance coverage obligations, concerning the Claims. Fetzer also alleged that, if the coverage determination is made in its favor, Travelers' failure to indemnify Fetzer and pay Fetzer's defense costs concerning the Claims amounts to breach of contract and bad

faith.  Discovery disputes ensued during the litigation, and on April 28, 2020, the court issued an order granting Travelers' motion to bifurcate the bad-faith claim and denying Travelers' motion to stay discovery on the bad-faith claim.  The court stated, "The parties and the court will deal with privilege and other discovery disputes as they arise."  This order is not under review in the instant appeal.

{¶ 4}  On August 4, 2020, Fetzer filed a "motion to compel the production of certain bad-faith documents from" Travelers.  On October 5, 2020, the court ordered Travelers to produce the documents sought in Fetzer's motion along with a privilege log.  The court conducted an in camera review of the documents at issue.  On March 25, 2021, the court issued an order summarily concluding that Ohio law applied to this discovery dispute concerning Fetzer's bad-faith claim.  Additionally, the court established three categories of documents:  Table 1 identified properly redacted documents that should be produced because the "unredacted information in the documents is relevant to Travelers' investigation into the existence of the policies alleged to be in effect at the time of the occurrence at issue"; Table 2 identified properly withheld documents that were privileged and, thus, should not be produced because the "documents contain confidential communications related to matters not at issue in the current case"; and Table 3 identified documents that were subject to production with additional redaction because they are "probative of Travelers' efforts to investigate the current claims and/or locate the alleged policies."

{¶ 5}  It is from this order that Travelers appeals.

## II. Law and Analysis

### A. Choice of Law

{¶ 6} In the case at hand, the parties disagree about which state's substantive law governs the discovery dispute stemming from Fetzer's bad-faith claim. Fetzer argues that Ohio (the location of Fetzer's headquarters and principal place of business) law applies, which would allow the discovery of certain attorney-client privileged documents in connection with the bad-faith claim. *See Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209, 214, 744 N.E.2d 154 (2001); R.C. 2317.02(A)(2). Travelers argues that either Michigan (the location of the Sites), Indiana (the location of Travelers' predecessor Aetna's headquarters in the 1960s), or Connecticut (the location of Travelers' headquarters) law applies, which would not allow said discovery. "A trial court's choice of law determination is subject to a de novo standard of review." *Holliday v. Ford Motor Co.,* 8th Dist. Cuyahoga No. 86069, 2006-Ohio-284, ¶ 14

### 1. Does Fetzer's Bad-Faith Claim Sound in Tort, Contract, or Insurance Contract Law?

{¶ 7} The Ohio Supreme Court has held that choice-of-law rules found in the 1 Restatement of the Law 2d, Conflict of Laws, Section 7, Comment b (1971), depend on the classification of each claim. *Ohayon v. Safeco Ins. Co.,* 91 Ohio St.3d 474, 476, 747 N.E.2d 206 (2001). Accordingly, courts "must *classify* the [plaintiff's] cause of action before we answer the choice-of-law question raised in their complaint because different choice-of-law rules apply depending on whether the cause of actions sounds in *contract* or in *tort*." (Emphasis sic.) *Id.*

{¶ 8} Fetzer argues that 1 Restatement of the Law 2d, Conflict of Laws, Section 145, which governs torts, applies to the bad-faith claim in this case. Travelers argues that 1 Restatement of the Law 2d, Conflict of Laws, Section 193, which governs insurance contracts, or 1 Restatement of the Law 2d, Conflict of Laws, Section 188, which governs contracts in general, applies.

{¶ 9} The Ohio Supreme Court analyzed whether a bad-faith cause of action involving the refusal to settle an insurance claim sounds in contract or tort.

> The liability of the insurer in such cases does not rise from its mere omission to perform a contract obligation, for it is well established in Ohio that it is no tort to breach a contract, regardless of motive. * * * Rather, the liability arises from the breach of the positive legal duty imposed by law due to the relationships of the parties. * * * This legal duty is the duty imposed upon the insurer to act in good faith and its bad faith refusal to settle a claim is a breach of that duty and imposes liability sounding in tort.

*Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983). *See also Dombrowski v. WellPoint, Inc.,* 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, ¶ 8 ("Insurer bad faith is an actionable tort in this case."); *Britton v. Smythe,* 139 Ohio App.3d 337, 350, 743 N.E.2d 960 (8th Dist.2000) (concluding that "a claim of bad faith is a tort arising out of the contractual duty to defend in good faith").

{¶ 10} Turning to the case at hand and following well-established Ohio law, we find that Fetzer's bad-faith claim is classified as a tort. Therefore, Section 145 of the Restatement 2d, Conflict of Laws applies.

### 2. Which State's Laws Apply to the Discovery Dispute Concerning Fetzer's Bad-Faith Claim?

{¶ 11} Under Section 145 of the Restatement 2d, Conflict of Laws, the elements to consider in determining which state's laws apply are as follows:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.[1]

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

>    (a) the place where the injury occurred,
>
>    (b) the place where the conduct causing the injury occurred,
>
>    (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and

---

[1] Section 6 of the Restatement 2d, Conflict of Laws states as follows:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

(d) the place where the relationship, if any, between the parties is centered.

{¶ 12} First, is the place where the injury occurred. In the case at hand, the alleged wrongful act is Travelers' "unreasonable delay and foot-dragging" that, Fetzer argues, resulted in Travelers' "failure to pay or make timely coverage determinations * * *" associated with the Claims. The associated alleged injury is that Fetzer "was forced to pay millions of dollars in defense and remediation costs out of pocket that Travelers should have covered under the policies it issued." Section 145 of the Restatement 2d, Conflict of Laws, Comment f, states that the "effect of the loss, [when it] is pecuniary in its nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business." Fetzer is the injured party, and Fetzer's headquarters and principal place of business are in Ohio.

{¶ 13} Second, is the place where the conduct causing the injury occurred. Travelers argues that this conduct occurred in Michigan and Connecticut, which are where the claims offices "with responsibility for handling * * * Fetzer's insurance coverage claim ha[ve] always been located * * *." Fetzer, on the other hand, argues that communication between the parties is the conduct causing the injury at issue. Fetzer was in Ohio and Travelers was in Connecticut when the communication took place.

{¶ 14} There is one notable exception to Travelers being in Connecticut, which is evidenced in an exhibit attached to Fetzer's motion to compel: a copy of a September 5, 2018 email from a representative at SandRun Risk to various people

including representatives from Fetzer and Travelers. The subject of this email is "Scott Fetzer — October 3, 2018 meeting in Cleveland." The body of the email references a meeting to be held at a law firm in downtown Cleveland, Ohio.

{¶ 15} Third, are the various ties the parties have to certain locations, including "domicil[e], residence, nationality, place of incorporation, and place of business * * *." Fetzer is a Delaware company headquartered in Ohio. Travelers is a Connecticut company headquartered in Connecticut and licensed to provide insurance in Ohio. Fetzer does not allege that Travelers' predecessor company, Aetna, engaged in bad faith; therefore, Indiana has no connection to this dispute.

{¶ 16} Fourth, is the place where the relationship between the parties is centered. Similar to our analysis of the second prong, communication between the parties is the bulk of the "relationship" between Fetzer and Travelers. According to the record, Travelers was in Connecticut and Fetzer was in Ohio when communication was sent and received.

{¶ 17} Analyzing these four factors against the backdrop of Section 6 of the Restatement 2d, Conflict of Laws, we find that Ohio has the most significant relationship to the occurrence — the alleged failure to make a timely coverage determination — as well as the parties.[2] Accordingly, the court did not err by applying Ohio law to the bad-faith tort claim.

---

[2] Fetzer also argues that Section 139(2) of the Restatement 2d, Conflict of Laws applies to the case at hand. This section states as follows: "Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission

### B. Privileged Documents

#### a. Standard of Review for Discovery Disputes Involving Privileged Documents

{¶ 18} "In general, discovery orders are reviewed under an abuse-of-discretion standard. But whether the information sought is confidential and privileged from disclosure is a question of law that is reviewed de novo." *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13. "The party claiming privilege has the burden of proving that the privilege applies to the requested information." *Hance v. Cleveland Clinic*, 8th Dist. Cuyahoga No. 110129, 2021-Ohio-1493, ¶ 17.

#### b. Analysis

{¶ 19} The scope of discoverable information includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case * * *." Civ.R. 26(B)(1). Here, the trial court ordered discovery to proceed on Fetzer's bad-faith claim concerning the allegations in the complaint that Travelers

> breached the duty of good faith and fair dealing by failing to[:] investigate and/or process Scott Fetzer's claims for coverage thoroughly, properly, fairly, and in a timely fashion[;] convey a definitive coverage position to Scott Fetzer within a reasonable time, and by failing to acknowledge coverage[; and] pay sums due under the Policies without reasonable justification.

---

should not be given effect." A plain reading of this section shows that it applies when "the state which has the most significant relationship with the communication" is different than "the local law of the forum." In the case at hand, Ohio has "the most significant relationship" and Ohio is "the local law of the forum." Therefore, Section 139(2) of the Restatement 2d, Conflict of Laws does not apply.

{¶ 20} Travelers argues that the trial court erred by ordering it to produce privileged documents. Travelers does not take exception with any specifics of the court's journal entry as related to any particular document ordered to be produced. Instead, it asks this court to hold that it not be required to produce any of the documents at issue, all of which, it claims, are protected by the attorney-client or work-product privilege. We decline to do so.

{¶ 21} Having found that Ohio law applies, we turn to *Boone*, 91 Ohio St.3d at 213-214, 744 N.E.2d 154, in which the Ohio Supreme Court held that "in an action alleging bad-faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage."

{¶ 22} In 2007, the legislature modified *Boone's* holding by enacting R.C. 2317.02(A)(2), which states that attorney-client communication is privileged,[3] with the following exception:

> [I]f the client is an insurance company, the attorney may be compelled to testify subject to an in camera inspection by a court, about communications made by the client to the attorney or by the attorney to the client that are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client, if the party seeking disclosure of the communications has made a prima-facie showing of bad faith, fraud, or criminal misconduct by the client.

---

[3] The testimonial privilege in R.C. 2317.02(A) "applies not only to prohibit testimony at trial, but also to protect the sought-after communications during the discovery process," including claims files and other documents. *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.,* 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 18, citing *Jackson v. Greger,* 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, ¶ 7, fn. 1.

{¶ 23} It is important to note that when the legislature modified and codified *Boone* in R.C. 2317.02(A)(2), it chose not to include the phrase "prior to the denial of coverage," which implicitly recognizes that bad faith may encompass scenarios other than denials of coverage. Accordingly, we find that *Boone* applies to the case at hand even though Travelers has not made an explicit coverage determination.[4]

{¶ 24} An insurance company can act in bad faith in ways other than denying coverage. *See, e.g., Unklesbay v. Fenwick*, 167 Ohio App.3d 408, 2006-Ohio-2630, 855 N.E.2d 516, ¶ 14 (2d Dist.) ("foot-dragging in the claims handling and evaluation process could support a bad-faith cause of action"); *Mundy v. Roy*, 2d Dist. Clark No. 2005-CA-28, 2006-Ohio-993, ¶ 18-21 (acknowledging that a bad-faith claim may be based on an insurance company's unreasonable delay in settling a claim as well as an unreasonable valuation of "pain and suffering or the amount of the insured's damages"); *Toman v. State Farm Mut. Auto Ins. Co.*, 8th Dist. Cuyahoga No. 102483, 2015-Ohio-3351, ¶ 1 (finding "a genuine issue of material fact exists as to whether State Farm lacked a reasonable justification for its failure to make [plaintiff] an offer to settle her uninsured motorists * * * claim").

{¶ 25} Travelers argues that *Bausman v. Am. Family Ins. Group*, 2016-Ohio-836, 60 N.E.3d 772 (2d Dist.2016), operates to protect the documents at issue as privileged. In *Bausman*, the Second District Court of Appeals remanded a bad-

---

[4] The trial court bifurcated the coverage dispute from the bad-faith claim while allowing discovery on the bad-faith claim to proceed. At the time of this discovery dispute, the trial court had not made a coverage determination. At this stage of the proceedings, these factors have unduly complicated these discovery questions.

faith case to the trial court to determine whether five emails sent between two in-house attorneys from defendant American Family Insurance Group were part of the "insurance claim" file or the "attorney" file. The *Bausman* Court found a "fundamental distinction between searching an attorney's file and an insurance company's claims file" in relation to whether documents were privileged. *Id.* The court further found that privileged documents in an "insurance claim" file are "plainly" discoverable, but questions loomed regarding documents in an "attorney" file. *Id. See also Moskovitz v. Mt. Sinai Med. Ctr.,* 69 Ohio St.3d 638, 663, 635 N.E.2d 331 (1994) ("on occasion, this rule might also apply to the file of a party's attorney"); *but see Cobb v. Shipman*, 11th Dist. Trumbull No. 2011-T-0049, 2012-Ohio-1676, ¶ 51 ("[W]e hold that, under certain circumstances, a defense attorney's file may be equally discoverable as an insurer's * * *.").

{¶ 26} This court has neither followed nor rejected the Second District's holding in *Bausman*, and we decline to address the issue today. Nothing in the record indicates any of the documents at issue are from an attorney's file.

{¶ 27} Additionally, Travelers has not identified which documents, if any, that the court reviewed in camera were allegedly improperly ordered to be disclosed or redacted. We will not make this argument for Travelers. *See Waldmann v. Waldmann*, 48 Ohio St.2d 176, 178, 358 N.E.2d 521 (1976) ("It is well-settled that the burden of showing that testimony [or documents] sought to be excluded under the doctrine of privileged attorney-client communications rests upon the party seeking to exclude it.").

{¶ 28} In *Dubson v. Montefiore Home*, 8th Dist. Cuyahoga No. 97104, 2012-Ohio-2384, this court affirmed the trial court's decision compelling the production of documents under R.C. 2317.02(B). In *Dubson*, the defendant nursing home ("Montefiore") asserted the attorney-client privilege "with respect to the production of three documents contained in three different employee personnel files * * *." *Id.* at ¶ 11. The trial court conducted an in camera inspection of the documents and ordered them produced. Montefiore appealed.

{¶ 29} This court found that Montefiore "failed to offer any argument in support of its claims that the documents were privileged. Instead, [Montefiore] solely identified the documents as either 'attorney correspondence' or 'attorney letter to employee' and objected to their production on the basis of 'attorney-client privilege and irrelevant." *Id.* This court further concluded that "we do not have the documents on appeal to review and therefore are unable to conclude that the trial court erred in ordering their release." *Id*. at ¶ 12.

{¶ 30} We realize that *Dubson* is not a bad-faith insurance case. Nonetheless, we apply *Dubson's* reasoning to the facts of the case at hand and conclude that we are unable to conduct a meaningful review of whether the trial court properly applied Ohio law regarding privileged documents without reviewing the documents themselves. The trial court conducted an in camera review of the documents at issue and ordered some of them produced as is, some of them produced with redactions, and some of them withheld as privileged. Travelers has failed to make the documents at issue available to this court for review and failed to

show that the court erred by ordering the production of documents under Ohio law. Accordingly, Travelers' sole assignment of error is overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LISA B. FORBES, JUDGE

ANITA LASTER MAYS, P.J., and
EILEEN T. GALLAGHER, J., CONCUR