[Cite as *Brummitt v. Seeholzer*, 2015-Ohio-71.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Bobby Brummitt, et al.

Appellants

v.

Dylan Seeholzer, et al.

Appellees

Court of Appeals No. E-13-035

Trial Court No. 2011-CV-0626

**DECISION AND JUDGMENT**

Decided: January 9, 2015

* * * * *

Florence J. Murray, and Dennis E. Murray, Sr., for appellants.

Craig G. Pelini, for appellee, Ohio Mutual Insurance Group.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Plaintiff-appellant, Bobby Brummitt, individually and as executor of the Estate of Faye Brummitt (collectively referred to as appellants), appeal the May 23, 2013 judgment of the Erie County Court of Common Pleas which, following a jury trial,

entered judgment in favor of appellants for $316,108.82, plus interest and costs, as damages following an auto collision. Appellants also appeal the trial court's June 3, 2013 judgment denying their motion for a new trial or additur. For the reasons set forth herein, we affirm.

{¶ 2} On September 25, 2010, appellants and Bobby's brother and sister-in-law, Willard and Vicky Brummitt, were travelling northeast on State Route 412 in Sandusky County, Ohio, when a vehicle operated by Dylan Seeholzer failed to stop at a stop sign and collided with appellants' vehicle. The vehicle flipped end over end coming to rest in a bean field. The occupants all suffered serious injuries with Vicky's being fatal.

{¶ 3} Appellants' injuries caused them to be transferred by air ambulance, hospitalized for approximately three weeks, and then undergo months of rehabilitation. Both wore cervical collars and Faye had surgery on her shoulder. Bobby had several broken teeth and suffered from stress-induced severe hives for months. Six months following the accident Faye was diagnosed with pancreatic cancer; she died one month later.

{¶ 4} On the date of the accident, Seeholzer was insured with an auto policy limit of $25,000. Appellants had uninsured/underinsured ("UIM") benefits through appellee, Ohio Mutual Insurance Group ("OMIG'), with a $500,000 limit. This action commenced on September 11, 2011, with appellants filing a complaint against the driver, Dylan Seeholzer, for negligence, and a negligent entrustment claim against the owner of the vehicle, Lorraine Keegan. Appellant Bobby also asserted a claim for loss of consortium

2.

against Seeholzer and Keegan. As to OMIG, appellants sought a declaratory judgment that they were entitled to UIM and medical benefits and for recovery of such benefits as determined by a jury. Appellants also alleged that OMIG failed to negotiate the payment of UIM and medical benefits to appellants in good faith. Keegan was later voluntarily dismissed from the action.

{¶ 5} On December 4, 2012, appellants filed an amended complaint adding a breach of contract claim against OMIG. In the interim, on November 2, 2012, OMIG filed a motion to bifurcate and stay discovery as to the bad faith claim. Specifically, OMIG requested that the issue of compensatory damages against Seeholzer be tried separately from the bad faith claim because it would be prejudiced by the release of privileged information, discoverable in the bad faith claim, while the underlying claim was still pending. Appellants opposed the motion and filed a motion to compel the discovery relating to the claims file. Appellants argued that OMIG failed to show how it would be prejudiced by the production of the discovery and that, if bifurcation was ordered, appellants desired that the bad faith claim be tried first. OMIG later argued that the success of appellants' bad faith claim was dependent on the success of their breach of contract claim which, too, was required to be tried first.

{¶ 6} On February 12, 2013, the court granted OMIG's motion to bifurcate and ordered that the damages issues be tried first with the bad faith claim "being tried shortly thereafter." As to the claims file, the court ordered that non-privileged items could be

3.

produced and that the determination as to which documents were discoverable would be determined through an in camera inspection. Following the trial on damages, the remaining documents could be produced.

{¶ 7} Leading up to trial, various motions in limine were filed by the parties. Appellants sought to prohibit OMIG's introduction of expert evidence regarding the reasonable value of medical services while OMIG sought to exclude evidence regarding the unrelated losses of the other two occupants in the vehicle, testimony regarding the causal relationship between the accident and Bobby's diabetes and Faye's ability to fight pancreatic cancer, and evidence of contractual reductions. On April 24, 2013, the court denied three of the motions and held in abeyance ruling on OMIG's motion regarding contractual reductions, or the amount accepted as full payment for the medical expenses. The court noted that its decision would depend on OMIG's approach (especially regarding the use of expert testimony) at trial.

{¶ 8} The six-day jury trial commenced on April 16, 2013. Testimony was presented from EMS, treating physicians and surgeons, therapists, their dentist, family members, appellant Bobby, and experts regarding the value of appellants' damages. Testimony was presented that the non-reduced medical expenses for both totaled $286,279.59. In dispute was the amount of noneconomic, or pain and suffering and consortium damages. The jury awarded Bobby $63,222.64 for medical expenses, $130,500 for non-economic damages, $5,000 for future economic damages, and $15,000 for future non-economic damages. As to Faye, the jury awarded $70,719.50 for medical

4.

expenses and $65,000 for past non-economic damages. These amounts, totaling $349,442.14, were reduced by the $16,666.66 credit for each plaintiff received from Seeholzer's insurer.

{¶ 9} On May 3, 2013, appellants filed a motion for a new trial or, alternatively, for additur. In their motion, appellants argued that as to Faye, the jury's verdict was against the weight of the evidence which established that her damages were $229,456.04, not the $135,719.50 that was awarded. Appellants contend that OMIG admitted in its answer to their amended complaint that Faye's damages were $229,456.04. Appellants further alleged misconduct by the prevailing party. In opposition, OMIG contended that its settlement offer was not evidence; rather, under Evid.R. 408, was an inadmissible offer to compromise. Further, in its answer to appellants' amended complaint, OMIG "admitted" that they made the settlement offer. OMIG claims its admission was not an admission to the amount of the damages sustained by appellants.

{¶ 10} On May 29, 2013, journalized on June 3, 2013, the trial court denied appellants' motion for a new trial finding that the jury simply rejected the appellants' adjustor's assessment of the damages and that, as the trier of fact, it was within their province to do so. The court further noted that there was no cause to believe that the jury ignored evidence.

{¶ 11} On May 31, 2103, appellants filed a notice of appeal and now raise the following six assignments of error for our consideration:

5.

Assignment of Error No. 1: The trial court erred by bifurcating the issue of the tortfeasor's liability from the plaintiffs-appellants' claim of bad faith against their underinsured motorist carrier.

Assignment of Error No. 2: The trial court erred by denying plaintiffs-appellants' motion for new trial or, alternative motion for additur.

Assignment of Error No. 3: The trial court erred by arbitrarily denying production of defendants-appellees' claims file immediately following the first trial in contravention of its pretrial order.

Assignment of Error No. 4: The trial court erred by disregarding its order that a second jury trial on plaintiffs-appellants' claim of bad faith against their underinsured motorist carrier would commence shortly after the first jury trial as to the tortfeasor's liability even if the first verdict did not exceed the UIM policy limits.

Assignment of Error No. 5: The trial court erred by journalizing a final order in contravention of Civ.R. 54(B).

Assignment of Error No. 6: The trial court erred by entering a final order because such order prejudiced plaintiffs' ability to timely prosecute their second jury trial on plaintiffs' claim of bad faith against their underinsured motorist carrier and causing piecemeal litigation and appeals in contravention of judicial economy.

{¶ 12} We will first address appellants' fifth and sixth assignments of error. Appellants contend that the trial court erred in journalizing its May 23, 2013 judgment entry on the jury trial as a final order and stating that there was "no just reason for delay" because their bad faith claim remained pending. Appellants further contend that the court, depriving them of their fundamental "opportunity to be heard" refused to hear arguments before entering the Civ.R. 54(B) language. Appellants further argue that they will be prejudiced by the delay between trials.

{¶ 13} In a case involving multiple claims and multiple parties, an order is final and appealable if it disposes of at least one full claim by one party against another and includes an express determination that "there is no just reason for delay" pursuant to Civ.R. 54(B). *Horner v. Toledo Hosp.*, 94 Ohio App.3d 282, 288, 640 N.E.2d 857 (6th Dist.1993). Here, the trial court's order disposed of appellants' contract action against OMIG and included the appropriate Civ.R. 54(B) language that there was no just reason for delay.

{¶ 14} Appellants first contend that the court's failure to hear their objections prior to its finding of "no just reason for delay" denied them of their due process rights to be heard. In support, appellants cite an Ohio Supreme Court case regarding a putative father's constitutionally protected rights prior to an adoption. *In re Adoption of Zschach*, 75 Ohio St.3d 648, 665 N.E.2d 1070 (1996). The court noted that because the relationship between a parent and a child is constitutionally protected, the relationship

7.

between a potential father and child is protected and the proceedings must comply with the Due Process Clause. *Id.* at 653. We find that this case has no application to present facts.

{¶ 15} Appellants argue that by inserting the Civ.R. 54(B) language the court made it "impossible" for the case to be tried before the same jury. We find that following the verdict, and based upon the trial court's ruling on OMIG's motion to bifurcate, the case was already concluded and would not have been tried before the same jury. Thus, appellants' argument fails.

{¶ 16} Next, appellants assert that they will suffer prejudice in the delay between trials. Appellants further argue that judicial economy was not served by ordering separate trials. The decision to bifurcate claims or issues is within the trial court's discretion. Civ.R. 42(B). In deciding to bifurcate, absent evidence to the contrary, it is presumed that the court considered the expenditure of time and its resources in conducting separate trials and allowing an interlocutory appeal. We find no error.

{¶ 17} Accordingly, we find that the trial court did not abuse its discretion when it inserted the Civ.R. 54(B) language making the May 23, 2013 judgment entry a final and appealable order. Appellants' fifth and sixth assignments of error are not well-taken.

{¶ 18} In appellants' first assignment of error, they argue that the trial court erred when it bifurcated the damages portion of their case from the bad faith claim against OMIG. Appellants contend that the trial court should have bifurcated the issues, breach of contract and bad faith claims, into two phases before the same jury rather than two

8.

separate trials. In support, appellants distinguish Civ.R. 42(B) which OMIG used as a basis for separating the trial and R.C. 2315.21(B) which addresses the bifurcation of evidence. Civ.R. 42 (B) provides:

> The court, after a hearing, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, or third-party claims, or issues, always preserving inviolate the right to trial by jury.

R.C. 2315.21(B) states that in a tort action that is tried to a jury and has claims for compensatory are well as punitive or exemplary damages the court, upon a motion by any party, may bifurcate the trial into two stages: first the compensatory damages, then any additional damages.

{¶ 19} A trial court's ruling on whether to bifurcate claims or issues is reviewed for an abuse of discretion. *Thomas v. Nationwide Mut. Ins. Co.*, 177 Ohio App.3d 502, 2008-Ohio-3662, 895 N.E.2d 217, ¶ 124 (8th Dist.). In *Thomas*, the court noted the trial court's decision to bifurcate the coverage and bad faith claims was in reliance on a Second District case finding that "not bifurcating the claims would be 'grossly prejudicial' to the insurance company." *Id.* at ¶ 126, citing *Garg v. State Auto Mut. Ins. Co.*, 155 Ohio App.3d 258, 2003-Ohio-5960, 800 N.E.2d 757 (2d Dist.). The court concluded that this was not an abuse of discretion. *Id.*

9.

**{¶ 20}** In granting OMIG's motion to bifurcate, the court found:

[I]t [is] prudent and advisable to first try the issue of damages and then try the Bad Faith claim. The scope of the Bad Faith claim will be determined by first trying the damages issue. Plaintiff essentially argues that the damages clearly exceed OMIG's UIM policy limits; but this is quintessentially a question of fact for the jury to decide. Counsel's mere say so, doesn't make it the case. In the event a jury determines that Plaintiff's damages are equal to or less than OMIG's offer, the Bad Faith claim to be tried would relate to matters other than the lack of reasonable justification for not paying limits (i.e. the Bad Faith claim could still involve delay in payment, etc.) The insuring agreement of the OMIG policy (likely most, if not all, UIM policies) provides:

"We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of * * * an 'underinsured motor vehicle.'"

So, even though OMIG is liable contractually up to the $500,000 limit of the UIM coverage, it is so liable only because Plaintiff is legally entitled to recover from Seeholzer. So the contractual obligation should be fixed and determined before the scope and extent of OMIG's alleged tort of Bad Faith can be assessed and tried; * * *.

{¶ 21} Reviewing the court's reasoning and relevant case law, we find that the court did not abuse its discretion when it bifurcated for trial the breach of contract and bad faith claims. Appellants' first assignment of error is not well-taken.

{¶ 22} In their second assignment of error, appellants contend that the trial court erred when it denied their motion for a new trial or, alternatively, additur. Appellants argue that the jury erroneously failed to consider OMIG's admission as to damages as well as the testimony of OMIG's claims adjuster and appellants' undisputed expert testimony.

{¶ 23} In determining whether to grant new trial, "the court must weigh the evidence and pass upon the credibility of the witnesses, not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence." *Rohde v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970), paragraph three of the syllabus.

{¶ 24} An appellate court reviews a court's ruling on a motion for a new trial under an abuse of discretion standard. *Harris v. Mt. Sinai Med. Ctr.,* 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201, ¶ 35; *Sharp v. Norfolk & W. Ry. Co.,* 72 Ohio St.3d 307, 312, 649 N.E.2d 1219 (1995). That is, we will not reverse the court's decision unless it is arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

11.

{¶ 25} Appellants requested a new trial under Civ.R. 59(A)(2), (4), (5), (6) and (9) which provide:

(A) Grounds

A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

* * *

(2) Misconduct of the jury or prevailing party;

* * *

(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;

(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;

(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;

* * *

(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.

In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown.

**{¶ 26}** Appellants' argument centers on the testimony of OMIG claims adjuster, Charles Weinman, who testified, over objection, regarding OMIG's answer to appellants' amended complaint. In its answer, OMIG admitted to offering $396,322.96 for both claims. Weinman agreed that, at some point, OMIG determined that this was a proper amount of damages. In its answer to the amended complaint, OMIG further provided that, as to Faye, it offered $229,456.04, as settlement of the claims relating to her injuries. OMIG counters that the jury was not required to accept the testimony of any one witness, expert or not, and was not required to agree with either parties' assessment of damages.

**{¶ 27}** We first note that OMIG's offer of settlement was not admissible evidence of the value of appellants' damages. Evid.R. 408 provides that evidence of "furnishing or offering or promising to furnish * * * a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity *or amount*, is not admissible to prove liability for or invalidity of the claim or its amount." (Emphasis added.)

**{¶ 28}** Contrary to appellants' argument, the evidence was not a judicial admission; OMIG admitted that the offer was made and the amount of the offer. Such evidence would likely be admissible during the bad faith claim proceedings. Generally settlement offers consider more than economic and non-economic damages; they include other factors including the costs of additional litigation. *See Z Interior Decorations, Inc.*

13.

*v. Westport Home of Ohio, Inc.*, 5th Dist. Delaware No. 11CAE020017, 2011-Ohio-4113, ¶ 37, citing *Schafer v. RMS Realty,* 138 Ohio App.3d at 295, 741 N.E.2d 155 (2d Dist. 2000).

{¶ 29} Based on the foregoing, we find that appellants failed to demonstrate that the jury's verdict was inadequate. Thus, the trial court's decision denying their motion for a new trial or additur was not in error. Appellants' second assignment of error is not well-taken.

{¶ 30} Appellants' third assignment of error challenges the trial court's ruling regarding discovery of the claims file. Appellants contend that the court initially stated that the materials would be discoverable at the conclusion of the breach of contract trial but then did not allow discovery to proceed. Appellants further argued that they were not aware that the issues were to be bifurcated into two separate jury trials, not just stages of a single trial.

{¶ 31} We first note that the contention that appellants did not realize that the issues in the case would be tried before two juries is not credible. The court specifically stated that it would try the issue of damages first and then the bad faith claim. This was the basis of prohibiting discovery of the privileged portions of the claims file until after the trial on damages. Appellants then commenced this appeal which, understandably, would further delay discovery.

{¶ 32} Appellants also argue that OMIG failed to delineate the reason that it would be prejudiced by the disclosure of the requested documents. We disagree. In its

14.

response to appellants' motion to compel, OMIG specifically stated that it would be prejudiced by discovery of the claims file because it contains defense theories and strategies including documentation and evaluations.

{¶ 33} Based on our review of the record, we find that the trial court did not err when it denied appellants' motion to compel discovery of the claims file. Appellants' third assignment of error is not well-taken.

{¶ 34} In appellants' fourth assignment of error, they argue that the trial court erred when, in contravention of its order that a second jury trial would commence "shortly" after the first jury trial, it found "no just reason for delay" and that such finding "prevents judicial economy and prejudiced Plaintiffs." Based on our disposition of appellants' fifth and sixth assignments of error, we find that the trial court did not abuse its discretion by certifying the judgment as final and appealable. Appellants' fourth assignment of error is not well-taken.

{¶ 35} On consideration whereof, we find that substantial justice was done the parties complaining and the judgment of the Erie County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellants are ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

E-13-035
Brummitt, et al. v.
Seeholzer, et al.

Mark L. Pietrykowski, J.    _____
              JUDGE
Thomas J. Osowik, J.

James D. Jensen, J.     _____
CONCUR.            JUDGE

          _____
            JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.