[Cite as *Drummond v. State Farm Mut. Auto Ins. Co.*, 2023-Ohio-283.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Rochee D. Drummond et al., | : | |
| Plaintiffs-Appellees, | : | No. 22AP-100 |
| | | (C.P.C. No. 20CV-7039) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| State Farm Mutual Auto Insurance Company, | : | |
| | : | |
| Defendant-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on January 31, 2023

**On brief:** *The Law Offices of Daniel R. Mordarski, LLC*, and *Daniel R. Mordarski*, and *Cox Law Office, LLC*, and *Michael T. Cox* for appellees. **Argued:** *Daniel R. Mordarski.*

**On brief:** *Gallagher Gams Tallan Barnes & Littrell, LLP*, and *James R. Gallagher* for appellant. **Argued:** *James R. Gallagher.*

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Defendant-appellant, State Farm Mutual Insurance Company ("State Farm"), appeals from a judgment of the Franklin County Court of Common Pleas, ordering State Farm to provide certain discovery to plaintiffs-appellees, Rochee D. Drummond and Gregg Drummond. For the reasons that follow, we affirm in part and reverse in part.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 13, 2018, appellees' vehicle was hit by a vehicle operated by Austin Yost. As a result of the vehicle collision, Rochee Drummond sustained physical injuries including damage to her knee and ankle. The ankle injury required surgical intervention

and her damaged knee required a total knee arthroplasty. Austin Yost's insurance carrier surrendered the limits of his $100,000 insurance policy to the appellees, as there is no dispute that Yost was at fault.

{¶ 3} On August 13, 2018, appellees were insured by State Farm under an insurance policy that provided uninsured and underinsured motorist coverage with a single person limit of $250,000. Appellees sought recovery from State Farm under the terms of their underinsured motorist policy ("UIM"). Appellees demanded the $250,000 limit from State Farm, less the $100,000 payment appellees received from the tortfeasors insurer and the $4,779.93 payment previously made by State Farm under the medical payments provision in the insurance contract. In other words, appellees demanded roughly $145,000 from State Farm under the terms of the UIM.

{¶ 4} In pre-suit negotiations, State Farm offered appellees $2,000 in settlement of her claim, which meant State Farm valued her claim at $106,779.93. The parties were unable to reach a settlement.

{¶ 5} On October 28, 2020, appellees filed a complaint against State Farm alleging breach of contract and bad faith. Appellees subsequently reduced their demand by $2,000, but no settlement could be reached.

{¶ 6} In February of 2020, appellees served document requests on State Farm seeking discovery of all documents in State Farm's claims file. Following a lengthy delay in responding, State Farm provided appellees with numerous documents but ultimately withheld many of the documents in the claims file based on a claim of attorney-client privilege and work product protections. State Farm did not, however, move the trial court for a protective order, and appellees did not file a motion to compel. Rather, on July 13, 2021, State Farm filed a Civ.R. 42(B) motion seeking an order bifurcating the bad faith claim from the breach of contract claim, and staying discovery on the bad faith claim pending resolution of the breach of contract claim. The stated purpose of State Farm's motion was to avoid prejudice to State Farm in its defense of the underinsured motorist claim, and prevent the needless disclosure of privileged attorney-client communications and confidential work product materials in the event that State Farm were to prevail on the breach of contract claim.

{¶ 7} On November 2, 2021, the trial court issued an order bifurcating the breach of contract claim and the bad faith claim upon finding, "it would prejudice the defense to have to litigate the bad faith claim while litigating the underlying issue of economic and non-economic damages." (Nov. 2, 2021 Entry Denying Def.'s Mot. at 1.) The trial court agreed to bifurcate the two claims for trial, and ordered State Farm to submit the disputed documents and a privilege log to the court for an in-camera review to determine whether the documents were protected by any privilege.

{¶ 8} State Farm submitted the disputed documents and a privilege log. On January 14, 2022, the trial court issued an order that includes the following findings and conclusions: 1) documents in the claims file identified as Bates Nos. 222, 229, 341-343, 540-543, 612, and 681 contain privileged attorney-client communications; 2) appellees demonstrated good cause to obtain otherwise protected work product materials; 3) State Farm waived attorney-client and work product privilege by failing to timely object; and 4) in spite of the waiver, State Farm may redact certain communications and work product materials, as set forth in this decision, before providing the documents to appellees.

{¶ 9} The trial court also modified its ruling on bifurcation due to prior "foot dragging" by State Farm, discovery abuses, and further delays occasioned by the need for a second trial on the bad faith claim. Instead of bifurcating the two claims and staying discovery on the bad faith claim, the trial court decided to try the bad faith claim to the same jury immediately following the verdict on the breach of contract claim.

{¶ 10} State Farm appealed to this court from the January 14, 2022 judgment. Appellees subsequently filed a motion to dismiss the appeal due to the absence of a final appealable order. On April 19, 2022, this court issued a ruling on the motion. In our memorandum decision, we set out appellees' argument as follows:

> First, they argue that the trial court ordered production of no materials for which State Farm had asserted privilege before the trial court. Second, they raise the related argument that State Farm failed to timely assert privilege and has accordingly waived any objection to the court's assessment thereof. Third, they argue that the materials State Farm seeks to protect are not, in fact, covered by attorney-client privilege, attorney-work-product privilege, or indeed any other recognized privilege.

(Apr. 19, 2022 Memo Decision at 4.)

**{¶ 11}** In discussing the appellees' argument in support of dismissal, we noted that the "third proposition seeks to circumvent consideration of the merits in this appeal by presupposing that the appeal will fail, and thus this proposition will not be considered in a motion to dismiss." *Id.* This court denied the motion to dismiss the appeal upon concluding that the appeal "is expressly taken from a provisional remedy," and the "order * * * arguably compels production of privileged or protected documents." *Id.* at 4-7.

## II. ASSIGNMENTS OF ERROR

**{¶ 12}** Appellant assigns the following as trial court error:

[1.] The Trial Court erred in denying State Farm's Motion to Stay Discovery as to the Bad Faith Cause of Action.

[2.] The Trial Court erred in ordering State Farm to produce privileged and confidential information to Plaintiffs-Appellees, including, but not limited to, its valuation of their claim in advance of a trial where the value of their claim is a primary issue to be litigated and also to produce post suit communications regarding the defense of the case.

## III. LEGAL ANALYSIS

### A. Assignments of Error

**{¶ 13}** In both of State Farm's assignments of error, State Farm contends the trial court erred when it denied State Farm's motion to stay discovery related to the bad faith claim and ordering premature and/or unnecessary production of otherwise privileged attorney-client communications and work product materials in the claims file. According to State Farm, premature disclosure of these privileged communications and protected materials before the jury determines the value of appellees' UIM claim will substantially prejudice State Farm in its defense of the breach of contract claim.

**{¶ 14}** Because the assignments of error are inextricably connected, we shall consider them together.

### B. Attorney-Client Privilege

**{¶ 15}** "In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law." *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, ¶ 18; *see, e.g., State ex rel.*

*Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009, ¶ 27 ("In Ohio, the attorney-client privilege is governed both by statue, R.C. 2317.02(A), which provides a testimonial privilege, and by common law, which broadly protects against any dissemination of information obtained in the confidential attorney-client relationship.").

{¶ 16} Under the common law, as expressed by the Supreme Court of Ohio in *Leslie*, the attorney-client privilege protects certain communications from disclosure as follows: "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." (Sic passim.) *Id.* at ¶ 21.

{¶ 17} With regard to the testimonial privilege, R.C. 2317.02(A)(2) specifies that when "the client is an insurance company, the attorney may be compelled to testify, subject to an in camera inspection by a court, about communications made by the client to the attorney or by the attorney to the client that are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client, if the party seeking disclosure of the communications has made a prima-facie showing of bad faith, fraud, or criminal misconduct by the client."[1]

{¶ 18} The trial court concluded that State Farm waived any claim of attorney-client privilege by failing to timely object to appellees' discovery requests. On appeal, appellees argue that "[b]ecause State Farm waived the attorney work product doctrine and did not appeal that waiver determination * * *, this Court should find the trial court did not abuse its discretion by ordering State Farm to produce its Claim's File." (Appellees' Brief at 36.) State Farm has argued that its assignments of error and argument challenge the finding of waiver. We find that State Farm's merit brief clearly sets forth a challenge to waiver. Thus, State Farm preserved its challenge to the finding on appeal.

{¶ 19} State Farm further contends that its untimely response to discovery was excusable in this case given the extraordinary circumstances surrounding the COVID-19 pandemic, the acknowledged cooperation of opposing counsel regarding discovery, and the absence of a motion to compel by appellees. We agree.

---

[1] Though the trial court found appellees' made a prima-facie showing of bad faith, the issue raised by this appeal pertains solely to allegedly privileged communications in the claims file, not testimony.

{¶ 20} The parties agree that appellees served their first request for production of documents and first set of interrogatories in late February of 2020. This court has previously taken judicial notice of the COVID-19 Public Health Emergency, and the order issued by the Franklin County Court of Common Pleas on March 13, 2020. *Miller v. Flowers*, 10th Dist. No. 20AP-226, 2021-Ohio-220, ¶ 23. We also note that the cases cited by appellee have found that a waiver of the privilege occurs where the party asserting the privilege has failed to do so in the initial response to discovery, or repeatedly failed to provide discovery. *See Chuparkoff v. Farmers Ins. of Columbus, Inc.*, 9th Dist. No. 22083, 2004-Ohio-7185; *Early v. Toledo Blade*, 130 Ohio App.3d 302, 320-21 (6th Dist.1998). Though we agree that State Farm's responses to the request for production of documents and interrogatories were untimely, State Farm did assert the privilege at the first opportunity.

{¶ 21} In the January 14, 2022 decision, the trial court stated: "The Court takes very seriously the attorney-client privilege, and is reluctant to disregard such claims of privilege, even where a party has waived them through delay." (Jan. 14, 2022 Decision & Entry at 7.) Accordingly, despite the finding of waiver, the trial court went on to review the documents in the claims file and determined that Bates Nos. 222, 229, 341-343, 540-543, 612, and 681 were the only documents in the claims file that contained privileged attorney-client communications.

{¶ 22} Given the trial court's expressed reluctance to enforce a waiver in this case, and given the extraordinary circumstances that arose while the discovery requests were outstanding, it was not reasonable to conclude that State Farm's delay in responding to discovery constituted a knowing and voluntary waiver of the applicable privilege. Accordingly, out of an abundance of caution, we shall conduct a de novo review to determine whether there were any additional attorney-client communications in the claims file, waiver notwithstanding.

{¶ 23} As previously noted, following an in-camera review of the claims file, the trial court found that documents identified as Bates Nos. 222, 229, 341-343, 540-543, 612, and 681 contained attorney client communications. The trial court permitted State Farm to redact the attorney-client communications in Bates Nos. 222, 229, 341-343, 540-543, 612, and 681, prior to disclosing the documents to appellees. Thus, with respect to the attorney-

client communications identified by the trial court, no disclosure was ordered. State Farm maintains, however, there are additional attorney-client communications in the claims file that were not acknowledged by the trial court and protected from disclosure. The problem with State Farm's argument is that State Farm failed to provide appellees or the trial court with a privilege log containing the information necessary to determine whether any other documents in the claims file might contain attorney-client communications.

{¶ 24} Civ.R. 26(B)(8)(a) provides that when information subject to discovery is withheld on a claim that it is privileged, the claim must be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim. The burden of showing that information sought to be excluded under the doctrine of privileged attorney-client communications rests upon the parties seeking to exclude it. *Lemley v. Kaiser*, 6 Ohio St.3d 258, 263-64 (1983).

{¶ 25} Civ.R. 26, "essentially requires the construction of a privilege log." *Hartzell v. Breneman*, 7th Dist. No. 10 MA 67, 2011-Ohio-2472, ¶ 19. "The privilege log must contain 'enough information regarding the withheld documents and the underlying attorney-client communications "to enable the demanding party to contest the claim." ' " *Total Quality Logistics, LLC v. BBI Logistics LLC*, 12th Dist. No. CA2021-04-012, 2022-Ohio-1440, ¶ 22. "Merely stating a 'broad and generalized claim of attorney-client privilege' for all responsive communications that are allegedly privileged is insufficient." *Id*. In essence, there must be some factual basis to support the privilege claim, such as "stat[ing] that communications were made between attorney and client for the purpose of procuring legal advice or representation." *Id*., quoting *Cargotec, Inc. v. Westchester Fire Ins. Co.*, 155 Ohio App.3d 653, 2003-Ohio-7257, ¶ 13 (6th Dist.).

{¶ 26} On July 27, 2021, State Farm provided appellees with a "privilege log" in response to appellees' request for production of documents briefly identifying the responsive documents for which it had asserted the attorney-client privilege and work product protections. Even though State Farm's privilege log in large part merely alleges a broad and general assertion of privilege, it is reasonable to conclude that State Farm has asserted attorney-client privilege with regard to the documents identified as Bates Nos. 222, 229, 341-343, 540-543, 612, and 681.

{¶ 27}   On February 11, 2022, State Farm submitted its claims file to the trial court for an in-camera review along with a "revised privilege log."   Therein, the responsive documents in the claims file are described alternatively as follows: "Internal impressions of Plaintiff's injuries and damages;" "[e]ntries made after suit was filed on October 28, 2020, regarding defense of lawsuit;" and/or "[r]eserve information and internal claim evaluation of Plaintiff's claim."  (Nov. 17, 2021 Def.'s Revised Priv. Log at 3-4.)  There are no facts set forth in the privilege log to support a finding that any of the documents contain communications with legal counsel seeking legal advice, other than the documents identified as Bates Nos. 222, 229, 341-343, 540-543, 612, and 681.

{¶ 28}   On January 14, 2022, the trial court issued a decision and judgment entry denying the motion to stay discovery.  The trial court essentially concluded that State Farm had not asserted attorney-client privilege with regard to any of the additional responsive documents in the claims file and that a review of the withheld documents revealed no additional attorney-client communications.

{¶ 29}   Under Ohio common law, communications between an attorney and the client are privileged where legal advice of any kind is sought by the client from the attorney in his capacity as such, and the communication relates to that purpose.  *Leslie* at ¶ 21.  The trial court reached the following conclusions after reviewing the claims file:

> The Court finds the Claims File only contains a few materials protected by Ohio's common law attorney-client privilege. The Court finds the great majority of the Claims File amounts to a series of data entry logs about prior events. The entries do not detail what was said or discussed, what advice was given, or the reasoning behind how Defendant reached its conclusions. Many of the pages listed in the privilege log merely cover contact information for certain interested stakeholders. Certainly, listing a phone number or email address cannot be considered privileged communications. Some of the entries in the Claims File do contain internal impressions of valuations. However, these data entries do not demonstrate how those valuations were reached, only that they existed. Again, these logs fall outside the scope of protected attorney-client communications.

(Decision & Entry at 5.)

{¶ 30}   Based upon our de novo review of the documents in the claims file, we agree generally with the trial court's characterization of the materials in the claims file and we

concur in the trial court's conclusion that they contain no attorney-client communications other than those identified by the trial court and protected from disclosure. The documents contain no memoranda or other form of communication directed to or received from anyone identified as legal counsel. Indeed, our review of the remaining materials reveal nothing that could be reasonably construed as a communication between State Farm and legal counsel seeking legal advice. Accordingly, we hold that the trial court did not err when it determined State Farm's claims file contained only those attorney-client communications identified in the judgment entry and protected from disclosure.

### C. Work Product Materials

### 1. Final Appealable Order

{¶ 31}   For an order granting discovery of work product materials to be a final order, an appellant "must affirmatively establish that an immediate appeal is necessary in order to afford a meaningful and effective remedy." *Smith v. Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, ¶ 8, citing R.C. 2505.02(B)(4)(b). *See also In re Special Grand Jury Investigation*, 10th Dist. No. 17AP-446, 2018-Ohio-760, ("*Special Grand Jury I*"); *In re Special Grand Jury Investigation of Medicaid Fraud & Nursing Homes*, 10th Dist. No. 18AP-730, 2019-Ohio-2532, ("*Special Grand Jury II*"). "This burden falls on the party who knocks on the courthouse doors asking for interlocutory relief." *Chen* at ¶ 8. Furthermore, where appellant "does not set forth any legal authority explaining why an appeal from the final judgment—the typical way to challenge the trial court's ruling on discovery matters—would fail to be a meaningful or effective remedy in this case; * * * we presume an appeal in the ordinary course would be a meaningful and effective remedy." *Karr v. Salido*, 10th Dist. No. 21AP-672, 2022-Ohio-2879, ¶ 16, citing *State v. Glenn*, 165 Ohio St.3d 432, 2021-Ohio-3369, ¶ 22-28. *See also Special Grand Jury I* at ¶ 11; *Special Grand Jury II* at ¶ 23-25.

{¶ 32}   State Farm contends that the disclosure of otherwise protected work product materials before the jury determines the value of appellees' UIM claim, would materially prejudice its defense of the breach of contract claim. State Farm maintains that an appeal following final judgment would not provide effective relief.

{¶ 33} At oral argument, counsel for State Farm argued convincingly that production of work product materials relevant to the bad faith claim may reveal the mental impressions of State Farm claims personnel regarding the value of the UIM claim and/or

the evidence State Farm believes is significant to that determination. Many of these documents were generated after a disagreement between the parties arose as to the value of the claim.

{¶ 34} Immediate disclosure of attorney work product materials in the claims file may place State Farm at a strategic disadvantage, however slight, in the trial or settlement of the breach of contract claim. We also find that this strategic disadvantage, to the extent that it exists, cannot be effectively remedied by this court in an appeal from a final judgment. Thus, for purposes of the R.C. 2505.02(B)(4)(b) analysis, State Farm has provided this court with a reasonable explanation why an appeal from the final judgment might fail to provide State Farm with meaningful or effective remedy in this case. Accordingly, we find that the January 14, 2022 judgment denying State Farm's motion to stay discovery on the bad faith claim pending the determination of claim value is a final appealable order because it compels immediate production of otherwise protected work product materials, and the prejudice to State Farm arising from immediate disclosure, if any, is of such a nature that it cannot be effectively remedied in an appeal following final judgment.

{¶ 35} Turning to the merits of State Farm's assignments of error as they relate to work product materials, we note that the work product doctrine generally protects a broader range of materials than does the attorney-client privilege because the work product doctrine protects all materials prepared in anticipation of trial. *Frank W. Schaefer v. C. Garfield Mitchell Agency*, 82 Ohio App.3d 322 (2d Dist.1992). Civ.R. 26(B)(4) provides, however, that "a party may obtain discovery of documents, electronically stored information and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing of good cause therefor."

{¶ 36} Documents containing work product materials typically reflect mental impressions, theories, or legal conclusions of an attorney or those working on behalf of the attorney. *In re Special Grand Jury Investigation*, 10th Dist. No. 18AP-730, 2019-Ohio-4014, ¶ 8, citing *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, ¶ 60. Additionally, information in an insurer's claims file sought to be protected from discovery as work product must have actually been "prepared in anticipation of litigation," and not merely in the ordinary course of business. *Dennis v.*

*State Farm Ins. Co.*, 143 Ohio App.3d 196, 203 (7th Dist.2001). The ordinary business reports of an insurer during the initial investigation of a claim made by one of its insureds are not generally considered to have been "prepared in anticipation of litigation." *Id*. The party seeking protection under the work product doctrine bears the burden of establishing that the doctrine applies. *Special Grand Jury I* at ¶ 12.

**{¶ 37}** The trial court conducted a review of the documents in the claims file and reached the following conclusion regarding the existence of attorney work product materials:

> [T]he Court finds that some of the data entered in the claims file may potentially contain attorney work product under Civ.R. 26(B)(4). However, the Court finds Plaintiffs' have demonstrated good cause as to why the Claims File should be disclosed, with the minor redactions indicated above. The Claims File goes to the heart of Plaintiffs' bad faith cause of action. The Claims File also provides evidence of the timing surrounding the claim. Plaintiffs have specifically alleged "foot-dragging" by Defendant. The Claims File contains discoverable information that may tend to support that claim.

(Sic passim.) (Internal citations omitted.) (Decision & Entry at 6.)

**{¶ 38}** State Farm argues that the trial court erred to its prejudice by ordering disclosure of work product materials in the claims file ahead of the trial on the breach of contract claim. We disagree.

**{¶ 39}** Ordinarily, discovery orders are reviewed under an abuse of discretion standard. *Bay Emm Vay Store, Inc. v. BMW Fin. Servs. NA, L.L.C.*, 10th Dist. No. 17AP-786, 2018-Ohio-2736, ¶ 11; *Heinrichs v. 356 Registry, Inc.*, 10th Dist. No. 15AP-532, 2016-Ohio-4646, ¶ 47. Under an abuse of discretion standard of review, an appellate court can reverse a trial court decision only when the decision is unreasonable, arbitrary, or unconscionable. *State ex rel. Worrell v. Ohio Police & Fire Pension Fund*, 112 Ohio St.3d 116, 2006-Ohio-6513, ¶ 10.

**{¶ 40}** State Farm contends that a de novo standard of review applies because the discovery order involves protected attorney work product. The case law on this issue does not support State Farms argument, as Ohio courts have applied the abuse of discretion standard in reviewing trial court rulings involving work product protections. *Stewart v. Siciliano*, 11th Dist. No. 2011-A-0042, 2012-Ohio-6123; *Brummitt v. Seeholzer*, 6th Dist.

No. E-13-035, 2015-Ohio-71; *Garg v. State Auto. Mut. Ins. Co.,* 155 Ohio App.3d 258, 2003-Ohio-5960, (2d Dist.); *Devito v. Grange Mut. Cas. Co.,* 8th Dist. No. 99393, 2013-Ohio-3435, ¶ 15. In *MA Equip. Leasing I, LLC v. Tilton,* 10th Dist. No. 12AP-564, 2012-Ohio-4668, this court noted that "the Supreme Court has characterized the determination of whether materials are protected by the attorney work product privilege and the determination of the good-cause exception to that privilege, not as questions of law, but as 'discretionary determinations to be made by the trial court.' " *Id.* at ¶ 16, citing *State ex rel. Greater Cleveland Regional Transit Auth. v. Guzzo,* 6 Ohio St.3d 270, 271 (1983). Accordingly, we shall apply an abuse of discretion standard in reviewing the trial court's decision to deny the stay of discovery on the bad faith claim and compel immediate production of work product materials.

{¶ 41} The trial court's decision does not specify which documents in the claims contained work product materials. The injury in this case occurred on August 13, 2018, and appellees filed their lawsuit on October 28, 2020. Many of the documents in the claims file are undated. Our review of the claims file reveals that appellees' forwarded their first demand for settlement of the UIM claim in September of 2019, and State Farm made the offer of $2,000 in January 2020.

{¶ 42} In its merit brief to this court, State Farm describes the attorney work product materials in the claims file as notes detailing the injury and medical treatment, notes revealing insurance reserves for appellees' UIM claim, activity after suit was filed and referral to defense counsel, notes discussing settlement authority, notations as to individual entries used in evaluation of the UIM claim, and detailed analysis and evaluation of appellees' UIM claim. State Farm asserts that disclosure of these documents to appellees ahead of the first trial on the breach of contract claim would be "grossly prejudicial" to State Farm's ability to defend the contract claim. (State Farm's Brief at 32.)

{¶ 43} State Farm's representations regarding the nature and extent of the work product materials in the claims file are somewhat exaggerated as is State Farm's claim of prejudice. Based upon our independent review of the claims file, we are convinced that a vast majority of the information and documents in the claims file were prepared by State Farm claims personnel in the ordinary course of claim review, particularly those materials generated before September 2019. Such documents do not qualify as protected work

product. We find, however, that State Farm has established the claims file does contain attorney work product materials. Our review of the specific documents identified by State Farm in briefing to this court reveals that Bates Nos. 45, 50-53, 194, and 218-221, are documents prepared in anticipation of litigation as they are either designated as litigation materials or contain information recorded within the relevant time frame. These documents reflect either data compilations supporting State Farm's valuation of the UIM claim, narrative statements regarding State Farm's valuation of the UIM claim, or proposed settlement authority and UIM reserves. Such information typically qualifies as attorney work product when prepared in anticipation of litigation.

{¶ 44} The trial court decided to try the bad faith claim to the same jury immediately following the verdict on the breach of contract. As a practical matter, the timing of the two proceedings means discovery related to the bad faith claim cannot be stayed.

{¶ 45} State Farm relies on *Loukinas v. State Farm Mut. Auto. Ins. Co.*, 1st Dist. No. C-180462, 2019-Ohio-3300, in support of the contention that the trial court erred by refusing to stay discovery on the bad faith claim pending the jury determination of the breach of contract claim. In *Loukinas,* the insureds brought a declaratory judgment action seeking UM coverage after they were injured by an uninsured motorist. The trial court bifurcated the breach of contract and declaratory judgment claims from the bad faith claim, but denied State Farm's motion to stay discovery as to bad faith.

{¶ 46} On appeal, State Farm argued that the trial court committed reversible error by compelling State Farm to produce evaluations contained in the claims file, and compelling State Farm personnel to testify regarding State Farm's evaluation of the plaintiffs' claim. According to State Farm, the claims file and testimonies included attorney-client communications and work product materials. State Farm did acknowledge that otherwise protected attorney-client communications and work product materials would be discoverable in connection with proceedings related to the bad faith claim.

{¶ 47} The court of appeals held that because the trial court bifurcated the bad faith claim from the underlying claims, the trial court erred by compelling the insurer to disclose otherwise privileged attorney-client communications and work product materials contained in its claims file prior to the resolution of the declaratory judgment and breach of contract claims. *Id*. at ¶ 29. The court of appeals reasoned that allowing discovery to proceed on the

bad faith claim would unfairly prejudice the insurer's ability to defend the underlying declaratory judgment and breach of contract claims. *Id.*

{¶ 48} State Farm has cited similar decisions from other appellate courts holding that bifurcation and a stay of discovery is necessary to avoid unfair prejudice to the insurer. *See Garg v. State Auto. Mut. Ins. Co.*, 155 Ohio App.3d 258, 2003-Ohio-5960, (2d Dist.); *Devito v. Grange Mut. Cas. Co.*, 8th Dist. No. 99393, 2013-Ohio-3435, ¶ 15. Both *Garg* and *Devito* rely on *Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209 (2001), wherein the Supreme Court advised that if the insurer argues its defense of the underlying coverage issue would be prejudiced by the joinder of the bad faith claim, the insurer should move the trial court for bifurcation and a stay of discovery on the bad faith claim. *Id.* at 213.

{¶ 49} In *Garg*, the insured brought an action seeking insurance coverage for fire damages to a warehouse. Grange denied coverage claiming the fire was intentionally set. The trial court ordered Grange to produce the entire claims file because any work product materials or attorney communications were relevant and discoverable with respect to the bad faith claim. The Second District concluded it was an abuse of discretion for the trial court to compel production of the claims file without bifurcating the issues of coverage and bad faith because joinder of the two claims for trial would substantially prejudice Grange. The court stated:

> We agree with Grange that the trial court's failure to bifurcate the bad faith claim for trial and to stay discovery on that claim would be grossly prejudicial to Grange and, thus, an abuse of discretion. The Gargs are not entitled to discover Grange's attorney-client communications and attorney work product materials for purposes of their breach of contract and unfair claims practices claims, absent waiver of those privileges.

*Id.* at ¶ 29.

{¶ 50} Appellees argue that the cases cited by State Farm are distinguishable because they involve the denial of insurance coverage rather than a simple dispute over the value of the claim. Appellees explain that in cases alleging a bad faith denial of coverage, prejudice to the insurer's defense of the coverage claim is presumed to arise out of the disclosure of otherwise privileged information in advance of the trial of the breach of contract claim. Appellees maintain that the insurer's claims file, in such cases, likely contains detailed information regarding the manner in which the insurer determined the

relevant facts, the insurer's interpretation of policy provisions, as well as the legal arguments, theories, and strategies considered by the insurer in reaching the coverage decision. Appellees maintain that, by contrast, there is little potential for unfair prejudice to the insurer in cases where the only disputed issue is the value of the claim.

{¶ 51} *Brummitt*, is a case where the disputed issue was the value of the insured's UIM claim. In *Brummitt*, the insured's case against the tortfeasor went to trial and the jury issued a verdict in excess of the tortfeasor's liability coverage. The tortfeasor appealed from the jury verdict and the insured appealed from the trial court's decision to stay discovery on the insured's bad faith claim pending the determination of the damages portion of their case.[2] The trial court had bifurcated the damages issue from the bad faith claim and stayed discovery on the bad faith claim upon finding that a determination of the insured's actual damages would be helpful to the trier of fact in determining whether the insurer acted in bad faith in valuing the UIM claim. The trial court did not conduct an in-camera review of the claims file prior to making its ruling on bifurcation and a stay of discovery.

{¶ 52} In the appeal, the insured argued that the trial court erred when it stayed discovery on the insured's bad faith claim against their UIM carrier and denied their motion to compel immediate production of the claims file. The insureds maintained that the insurer failed to show how it would be prejudiced by the production of the claims file if bifurcation was ordered. The insurer argued that the breach of contract claim should be tried first because the success of the bad faith was dependent on the success of the breach of contract claim.

{¶ 53} The court of appeals, relying on *Garg*, held that the trial court did not abuse its discretion when it bifurcated the breach of contract and bad faith claims, stayed discovery on the bad faith claim, and denied the motion to compel the claims file. *Brummitt* at ¶ 16. The court of appeals noted that the insurer "specifically stated that it would be prejudiced by discovery of the claims file because it contains defense theories and strategies including documentation and evaluations." *Id*. at ¶ 32. In reaching this conclusion, the court of appeals noted:

> As to the claims file, the court ordered that *non-privileged items could be produced* and that the determination as to which documents were discoverable would be determined

---

[2] The UIM policy limits exceeded the jury verdict against the tortfeasor.

through an in camera inspection. Following the trial on damages, the remaining documents could be produced.

(Emphasis added.) *Id.* at ¶ 6.

{¶ 54} Here, the trial court elected to try the bad faith claim to the same jury immediately following the jury verdict on the breach of contract claim. The trial court provided the following reason for its ruling:

> The Court finds that, although it has previously bifurcated the underlying bodily injury UIM claim, a stay of discovery as to the bad faith claim would not promote judicial expedience and economy. To be clear, the Court ruled on November 2, 2021 that bifurcation of the underlying accident damages and the bad faith claims was appropriate. For a jury to hear evidence of bad faith along with evidence of Plaintiffs' underlying UIM claim would substantially prejudice Defendant.
>
> The Court's concern was and is that a jury may "run wild" with a damages award based upon Defendants' alleged bad faith actions after-the-fact. However, providing the claims file at a later date (i.e. after the UIM/damages portion of the trial) would require a separate hearing, a separate jury, and needless delay in resolving these related causes of action. Given the concerns of "foot-dragging" raised by Plaintiffs, as well as the delay in responding to timely discovery requests, as indicated above, the Court prefers to move this case along more expeditiously than Defendant would suggest.

(Emphasis deleted.) (Decision & Entry at 7-8.)

{¶ 55} A decision that supports the trial court's ruling in this case is *Stewart*. In *Stewart*, the insurer acknowledged UM/UIM coverage, but withdrew an offer of settlement upon discovering the insured may have had a previous injury. The insured filed a civil action against the insurer alleging breach of contract and bad faith. The trial court denied the insurers motion to bifurcate and stay discovery on the bad faith claim upon finding that judicial economy and the potential prejudice to the insured outweighed any potential prejudice to the insurance company arising from the disclosure of otherwise privileged information in the claims file. The trial court had made the following specific findings in support of the ruling:

> (1) [Insurer] failed to make any specific showing as to how it would be prejudiced if the breach of contract claim is not

> bifurcated from the bad faith claim, (2) the breach of contract and the bad faith claim are necessarily intertwined to the extent that it would be highly prejudicial to [the insured] if they were bifurcated, (3) the mere fact that the two claims will be tried together is insufficient to find that jury confusion would result, (4) the testimony of [the insured's] counsel, which, if necessary, may disqualify counsel, would not be prejudicial [to the insurer], and (5) the interest of judicial economy weighs against bifurcation of the two claims.

*Id.* at ¶ 37.

{¶ 56} The court of appeals held that the trial court did not abuse its discretion in denying bifurcation and a stay of discovery on the bad faith claim because the trial court expressed justifiable reasons for doing so. *Id.* at ¶ 38.

{¶ 57} We note that in this case, unlike *Stewart*, the trial court separated the trial of the breach of contract claim from the bad faith claim. The trial court's decision to try the breach of contract claim before the bad faith claim effectively prevents attorney work product materials related solely to the bad faith claim from being admitted into evidence at the trial of the breach of contract claim. By separating the two proceedings, the trial court eliminated the danger that the jury "could run wild" in valuing the UIM claim based on evidence relevant to the bad faith claim. Moreover, because the jury will first hear and determine the breach of contract claim, the parties will have the benefit of the jury verdict on claim value before the trial of the bad faith claim commences.

{¶ 58} Unlike the circumstances in the *Brummitt* case, the trial court in this case reviewed the claims file ahead of trial on the breach of contract claim and assessed the impact an immediate disclosure on State Farm's defense of the breach of contract claim. We have also reviewed the information in the claims file and we cannot say that the trial court abused its discretion when it determined that State Farm's defense of the breach of contract claim would not be prejudiced by the immediate disclosure of work product materials in the claims file. State Farm's estimation of the value of appellees' UIM claim, and the opinions of State Farm's personnel regarding settlement authority and insurance reserves are irrelevant to the issue to be decided in the first trial. We also find that prior knowledge of the work product materials in the claims file will provide appellees with no meaningful insight into State Farm's litigation strategy on the breach of contract claim, as the only disputed issue in the contract action is the value of the UIM claim. Based on our de novo

review of the specific work product materials in State Farm's claim file, we perceive no actual prejudice to State Farm's defense of the breach of contract claim arising from the disclosure of these work product materials ahead of the jury verdict as to the value of the UIM claim. Though we acknowledge the  trial court's unconventional decision to try the bad faith claim immediately following the jury verdict as to the value of the claim gave rise to the possibility of prejudice, no such prejudice arose in this particular case.

{¶ 59}  State Farm insists however, it was error to compel immediate production of otherwise protected work product in the claims file because a jury verdict in State Farm's favor in the first trial will render such disclosure unnecessary.  We cannot agree with this assertion as appellees' bad faith claim is not solely predicated on State Farm's alleged failure to properly value the UIM claim.  Indeed, appellees complaint also alleges that State Farm acted in bad faith during the claims process when it "dragged its feet and failed to timely provide consent to accept the liability limits, failed to timely respond to the UIM claim," and subsequently failed to respond to appellees' continued efforts to engage in any meaningful discussion of the claim.  (Oct. 28, 2020 Compl. at 10.)  Thus, a second proceeding on the bad faith claim may yet be necessary even if jury renders a verdict favorable to State Farm on claim value.

{¶ 60}  State Farm argues alternatively that even if this court finds that the trial court did not err in denying a stay of discovery of the bad faith claim, certain work product materials generated after suit was filed are not discoverable.  We agree.

{¶ 61}  In State Farm's merit brief, State Farm argues that Bates Nos. 45-51, 77-78, 121-127, 197 and, 271-273 are work product materials in the claims file that were generated after October 28, 2020, the date this lawsuit was filed.  Upon an independent review of the claims file, and in light of *Boone*, we find that Bates Nos. 45-51, 77-78, 121-127, 197, and 271-273 contain work product materials relevant to the State Farm's defense of the bad faith claim, but not otherwise probative of State Farm's alleged bad faith in handling appellees' insurance claim. Because these post suit work product materials cast no light on State Farm's alleged bad faith in the handling of appellee's insurance claim, they are not discoverable in this litigation. *Stewart* at ¶ 54-56.  Accordingly, we hold that the trial court abused its discretion when it ordered State Farm to produce work product materials relevant to State Farm's defense of this case.

{¶ 62}   This court has cautioned that " '[a] review under the abuse-of-discretion standard is a deferential review.' "  *State v. Graggs*, 10th Dist. No. 13AP-852, 2014-Ohio-1195, ¶ 6, quoting *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.  Under the particular circumstances of this case, and with the exception noted herein, we hold that the trial court did not abuse its discretion by denying State Farm's motion to stay discovery on the bad faith claim pending resolution of the breach of contract claim.

{¶ 63}   Based on the foregoing, State Farm's two assignments of error are sustained in part, and overruled in part.

## IV.  CONCLUSION

{¶ 64}   State Farm's first and second assignments of error are sustained in part, and overruled in part. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this decision.

*Judgment affirmed in part and reversed in part*;
*case remanded.*

KLATT, J., concurs.
DORRIAN, J., concurs in judgment only.
_____